Donald E. J. Kilmer, Jr. [SBN: 179986]
LAW OFFICES OF DONALD KILMER
1645 Willow Street, Suite 150
San Jose, California 95125
Voice: (408) 264-8489
Fax:   (408) 264-8487
E-Mail: Don@DKLawOffice.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| MARK AARON HAYNIE, THE CALGUNS FOUNDATION, INC., and THE SECOND AMENDMENT FOUNDATION, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> KAMALA HARRIS, Attorney General of California (in her official capacity) and CALIFORNIA DEPARTMENT OF JUSTICE, and DOES 1 TO 20, <br><br> Defendants. | Case No.: CV 10 1255 SI <br><br> **DECLARATION OF GENE HOFFMAN OPPOSING DEFENDANTS' MOTION TO DISMISS** <br><br> Date:  June 10, 2011 <br> Time:  9:00 a.m. <br> Courtroom: 10 <br> Judge: Honorable Susan Illston <br> Trial Date: N/A <br> Action Filed: March 25, 2010 |

I, GENE HOFFMAN, declare as follows:

1. I am the Chairman and co-founder of The Calguns Foundation (CGF) a party in this action.

2. CGF (www.calgunsfoundation.org) is a 501(c)3 nonprofit organization serving its members by providing Second Amendment-related education, strategic litigation and defending innocent California gun owners from improper prosecution.

3.  CGF works to educate the general public and the government in an ongoing effort to protect the rights of individuals to acquire, own and lawfully use firearms in California.

4.  The formation of CGF was partially inspired by a desire to counteract a disinformation campaign orchestrated by the California Department of Justice (DOJ) in response to gun owners realizing the implications of the California Supreme Court Decision in *Harrot v. County of Kings* and the expiration of the Federal Assault Weapons laws.

5.  In late 2005, various individuals and licensed gun stores began importing into California AR pattern rifles and the receivers for them.

6.  In response to inquiries about the legality of importing and possessing certain AR and AK pattern rifles and receivers, DOJ began replying in their official letters that while THEY were of the opinion that these rifles were legal, local District Attorneys might disagree and prosecute anyway. True and correct copies of these letter are attached as <u>Exhibit A</u> and they all follow a similar pattern of declaring a certain gun part (receiver) legal to import into California and then warning the recipient that California's 58 District Attorneys may have a different opinion that could result in prosecution. See:

    i.  December 12, 2005 letter from DOJ to Ms. Amanda Star rendering an opinion about the legality of a Stag-15 Lower receiver but warning that local prosecutors may disagree and prosecute accordingly.

    ii. January 18, 2006 letter from DOJ to BST Guns also opining out the legality of firearms, but giving the same warning the 58 county prosecutors could potentially prosecute anyway.

    iii. December 28, 2005 letter from DOJ to Matthew Masuda. Same pattern.

    iv. December 27, 2005 letter from DOJ to Christopher Kjellberg.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Declaration: Hoffman     Page 2 of 8     Haynie v Harris

|   |   |      |   |
|---|---|------|---|
| 1 |   |      | Same pattern. |
| 2 |   | v.   | December 27, 2005 letter from DOJ to Kirk Haley. Same pattern. |
| 4 |   | vi.  | December 28, 2005 letter from DOJ to Mark Mitzel. Same pattern. |
| 6 |   | vii. | December 28, 2005 letter from DOJ to Jason Paige. Same pattern. |

7. From February to May 2006, the California Department of Justice issued a series of memorandums that were obtained as part of a California Public Records Request. A true and correct copy of that disclosure is Attached as Exhibit B. The memorandums are remarkable because:

   a. The Department of Justice made changes to the various versions of this memorandum due to Jason Davis, then an attorney for the National Rifle Association, pointing out legal flaws in the various iterations.

   b. In all versions of the memorandum, the Department of Justice directly conflicted the previously published Assault Weapons Information Guide by stating that owners of a firearm with features had to, "permanently alter the firearm so that it cannot accept a detachable magazine." "Permanent alteration" is not required in the Penal Code, the Assault Weapons Information Guide, or the then existing California Code of Regulations 11 C.C.R. 5469.

8. On or about May 10, 2006, DOJ counsel Alison Merrilees informed a member of the public that the DOJ wished to create a test case, "[w]e are eagerly awaiting a test case on this, because we think we'll win." A true and correct copy of the email that was obtained as part of a Public Records Act request is attached as Exhibit C.

9. In May 2006, DOJ issued an internal memo to phone staff that stated, "It is

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Declaration: Hoffman        Page 3 of 8        Haynie v Harris

1     DOJ's opinion that under current law, a semiautomatic centerfire rifle that is
2     modified to be temporarily incapable of accepting a detachable magazine, but
3     can be restored to accommodate a detachable magazines, is an assault
4     weapons if it has any of the features listed in §12276.1(a)(1)," and
5     "Individuals who alter a firearm designed and intended to accept a
6     detachable magazine in an attempt to make it incapable of accepting a
7     detachable magazine do so at their legal peril," stating further, "[w]hether or
8     not such a firearm remains capable of accepting a detachable magazine is a
9     question for law enforcement agencies, district attorneys, and ultimately
10    juries of twelve persons, not the California Department of Justice." A copy of
11    this memorandum was obtained as part of a Public Records Act Request and
12    is attached as Exhibit D.

13    10. On or about June 6, 2006, DOJ issued a Notice of Proposed Rulemaking. The
14        proposed amendment would have "define[d] a sixth term, "capacity to accept
15        a detachable magazine", as meaning "capable of accommodating a detachable
16        magazine, but shall not be construed to include a firearm that has been
17        permanently altered so that it cannot accommodate a detachable magazine."
18        A true and correct copy of the notice is attached as Exhibit E.

19    11. On or about November 1, 2006, DOJ issued a "Text of Modified Regulations"
20        The updated text attempted to define "detachable magazine" as "currently
21        able to receive a detachable magazine or readily modifiable to receive a
22        detachable magazine" and had other "permanency" requirements. A true and
23        correct copy of the notice is attached as Exhibit F.

24    12. I allege on information and belief, DOJ did not submit the Modified
25        Regulations to the Office of Administrative Law ("OAL") and thus the 2006
26        Rulemaking did not take effect.

27    13. On or about July 11, 2007, I petitioned the OAL to have them find that the
28        continued publication of the "Important Notice" Memorandum after the 2006

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Declaration: Hoffman          Page 4 of 8          Haynie v Harris

       Rulemaking that was not submitted to OAL was an "Underground Regulation." See Exhibit G.

14. On or about September 11, 2007, OAL accepted my petition. See Exhibit H.

15. On or about September 21, 2007, OAL suspended it's review as DOJ issued a certification on or about September 20, 2007 that stated, "[DOJ] reserves the right to interpret the law in any case-specific adjudication, as authorized in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557,572." A true and correct copy of the letter from the OAL along with DOJ's certification is attached as Exhibit I.

16. The reservation in the certification of September 20, 2007 leads to uncertainty over whether the DOJ would take the position that permanence was required for modifications to a firearm so that the firearm would not have "the capacity to accept a detachable magazine."

17. On or about September 29, 2008, DOJ responded to a letter inquiry about the legality of selling a semiautomatic center fire rifle with an alternate version of the bullet button colloquially known as the Prince-50 kit. DOJ stated:

> "Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a fixed, removeable magazine can also be considered to have the 'capacity to accept a detachable magazine,' we are unable to declare rifles configured with the 'Prince 50 Kit' or 'bullet button' to be legal or illegal."

See Exhibit J, with special attention to Attachment A, which is the letter dated September 29, 2008.

18. On or about November 3, 2008, DOJ replied to Kern County DA Edward Jagels:

> "Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a fixed, removeable magazine can also be considered to have the 'capacity to accept a

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

|   |   |   |
|---|---|---|
| 1 |   | detachable magazine,' we are unable to declare rifles configured |
| 2 |   | with the 'Prince 50 Kit' or 'bullet button' to be legal or illegal." |
| 3 |   | A true and correct copy of this letter is attached as Exhibit K.  The letter is hard to read due to multiple copies.  If discovery proceeds in this matter, I would expect to obtain a cleaner copy. |
| 6 | 19. | Now, not only is DOJ claiming it has no duty to issue a clarifying bulletin to the State's District Attorneys and Law Enforcement Community, on this issue; they have apparently engaged in a pattern of disinformation and confusion on the issue of whether a rifle fitted with a device that makes it incapable of accepting a detachable magazine is legal to own in California.  In other words, it could be argued that DOJ's firearms division has a separate and distinct duty to clear up the confusion they have created, separate and apart from any constitutional, statutory and/or common law duty. |
| 15 | 20. | The Calguns Foundation has defended many incidents of law abiding gun owners and retailers whose firearms were either seized, the individual was arrested and/or charged with violating Assault Weapons Control Act. |
| 18 | a. | In approximately April 2007 Matthew Corwin was arrested and charged with multiple violations of the AWCA. See People v. Matthew Corwin, Case No. GA069547, Los Angeles Superior Court. |
| 21 | b. | In November 2008, John Crivello had a semiautomatic centerfire rifle with a bullet button seized from his home in Santa Cruz, California by the Santa Cruz Police Department. Counsel provided by CGF educated the Santa Cruz District Attorney's office. Counsel to CGF was advised that DOJ stated that it was unclear whether the bullet button was legal but that the District Attorney should file anyway. The District Attorney (ADA Dave Genochio and/or Charlie Baum) dropped charges and the firearm was returned to Mr. Crivello. CGF spent $645.00 |

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Declaration: Hoffman          Page 6 of 8          Haynie v Harris

    defending Mr. Crivello.

    c. On or about November 3, 2009, Deputy J. Finley of Orange County Sheriff's Department seized a bullet button equipped Stag Arms AR-15 style firearm from Stan Sanders. CGF counsel was engaged to explain the legality of the firearm to the Orange County Sheriff's Department and the firearm was subsequently returned to Mr. Sanders. The Orange County Training Bulletin was issued partially in response to this incident. CGF spent $650.00 defending Mr. Sanders.

    d. On or about March 30, 2010, Robert Wolf was arrested by the Riverside County Sheriff's Department for possession of a semiautomatic centerfire rifle with a "Prince 50 Kit." CGF counsel intervened and had the case dismissed on or about November 11, 2010 with the firearm subsequently returned to Mr. Wolf. CGF spent $5975.00 defending Mr. Wolf.

    e. In May of 2010, Brendan Richards was arrested, charged, and held in jail in Sonoma County for six days before he was released on bail for possession of a semiautomatic center-fire pistol with a bullet button. All charges were dropped on or about September 9, 2010. To date, CGF has spent $11,224.86 defending Mr. Richards.[1]

    f. Confusion about the legality of semiautomatic centerfire rifle with a bullet buttons resulting from DOJ's misinformation continues. On or about March 29, 2011, the Cotati Police Department seized a semiautomatic center-fire rifle with a bullet button from Max Horowitz. The Cotati Police Department has forwarded a police report to the Sonoma County DA's office. CGF counsel has been retained to defend Mr. Horowitz.

---

[1] There is a federal civil rights case in the process of being filed and a Notice of Related case will be filed and an Administrative Motion to Relate will be filed shortly in this matter.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Declaration: Hoffman      Page 7 of 8      Haynie v Harris

21. To my knowledge, the first time that the DOJ has ever come close to admitting that a bullet button equipped semiautomatic center-fire rifle is legal was upon the filing of the Memorandum of Points and Authorities in Support of Motion to Dismiss, docket entry 26-1 in this case on or about May 6, 2011.

I declare under penalty of perjury under the laws of California and the United States that the forgoing is true and correct and that this declaration was executed in San Jose, CA on May 19, 2011.

/s/

Gene Hoffman, Chairman of CGF, Inc.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Declaration: Hoffman                 Page 8 of 8                 Haynie v Harris