| | | |
|---|---|---|
| Gene Hoffman | Page 1 | 2/25/2009 |
| The Calguns Foundation | "Capacity To Accept" Underground Regulation | |

Office of Administrative Law
300 Capitol Mall, Suite 1250
Sacramento, CA 95814

Attention: Chapter 2 Compliance Unit

**Petition to the Office of Administrative Law**

Re:     Bureau of Firearms "Capacity to accept" Underground Regulation

From:  Gene Hoffman, Jr., Chairman, The Calguns Foundation

Date:   February 26, 2007


**1. Identifying Information:**

>Gene Hoffman, Jr.
>Chairman
>The Calguns Foundation
>3200 Bridge Parkway Suite 202C
>Redwood City, CA 94065
>650-275-1015
>hoffmang@calgunsfoundation.org


**2. State agency or department being challenged:**

>California Department of Justice, Bureau of Firearms ("BoF")


**3. Description of the Underground Regulation and the Department Action By Which it was Issued**

BoF is promulgating an Underground Regulation as exemplified in a letter dated September 29, 2008 to Mr. Mike Badella of Dolorian Capital, Inc. of Fresno (Attachment A hereto) (hereinafter, the Capacity to Accept Letter or "CTA Letter") which is in response to Mr. Badella's letter dated September 25, 2008 (Attachment B hereto.) That letter states in pertinent part:

>Regarding your question about using the "Prince 50 Kit" it is our understanding that such a device is designed to temporarily attach a magazine to a rifle, but allow the magazine to be removed from the rifle with the use of a tool. While there is no question that such a configuration would render the magazine of a rifle to be non-detachable, **it is unclear whether such a configuration negates the rifle's "capacity to accept" a detachable magazine.** Since there are no statutes,

case law, or regulations concerning whether a rifle that is loaded with a fixed, removable magazine can also be considered to have the "capacity to accept a detachable magazine," we are unable to declare rifles configured with the "Prince 50 Kit" or "bullet button" to be legal or illegal. To do so without regulation would create an illegal "underground regulation."

*Attachment A*, para 5, (emphasis added.)

**4. The Legal basis for believing that the guideline, criterion, bulletin, provision in a manual, instruction, order, standard of general application, or other rule or procedure is a regulation as defined in Section 11342.600 of the Government Code and that no express statutory exemption to the requirements of the APA is applicable:**

The California Administrative Procedure Act, California Government Code §11400 et seq., defines "regulation" to mean "every rule, regulation, order, or standard of general application . . . adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it . . . ." §11342.600.

Furthermore, "[a] regulation subject to the APA . . . has two principal identifying characteristics. . . . First, the agency must **intend its rule to apply generally**, rather than in a specific case. The rule need not, however, apply universally; a rule applies generally so long as it declares how a certain class of cases will be decided. . . . Second, the rule must '**implement, interpret, or make specific** the law enforced or administered by the agency, or govern the agency's procedure.' " *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal. 4th 557, 571 (1996) (emphasis added, internal citations omitted).

*A) The "CTA Letter" is a Regulation*

The "CTA Letter" is a "regulation" within the meaning of §11342.600, as it attempts to supplement, interpret, revise, and make specific the validly adopted definition of the term "detachable magazine" in Penal Code §12276.1 and 11 C.C.R. 5469[1] by re-interpreting the phrase "capacity to accept a detachable magazine." On knowledge and belief the "CTA Letter" materially reflects the standard of general application that BoF provides to District Attorneys throughout California when they inquire about the legality of various non-detachable magazine semiautomatic rifles.

*B) The "CTA Letter" Applies Generally*

---

[1] "While there is no question that such a configuration would render the magazine of a rifle to be non-detachable, **it is unclear whether such a configuration negates the rifle's 'capacity to accept' a detachable magazine.** " (emphasis added).

Gene Hoffman                      Page 3                       2/25/2009
The Calguns Foundation            "Capacity To Accept" Underground Regulation

This rule applies generally, as it applies to all owners and sellers of semiautomatic centerfire rifles in the State, therefore satisfying the first element of *Tidewater*.[2]

*C) The "CTA Letter" Purports to Implement, Interpret and Make Specific California Penal Code § 12276.1*

The "CTA Letter" is an attempt to promulgate a new interpretation of the term "detachable magazine" for semiautomatic centerfire rifles that are modified to be incapable of accepting detachable magazines (and have features listed in 12276.1.) This is an attempt to force owners to alter the configuration of their rifle or face felony criminal prosecution.[3]

The interpretation as stated in the "CTA Letter" thus attempts to interpret[4] and make specific the definition of exactly which semiautomatic centerfire rifles are prohibited in the State by Penal Code §12276.1 and 11 C.C.R. 5469 by disingenuously inserting some heretofore unknown uncertainty in the definition of the APA defined term **"detachable magazine"** supposedly brought about by the phrase **"capacity to accept,"** therefore satisfying the second element of *Tidewater*.

No express APA exemption in Government Code §11340.9 applies to the "CTA Letter" and there are no express exemptions to the APA for the BOF in the relevant Penal Code sections.[5]

**5. Legal Basis for why the "CTA Letter" is an underground regulation**

*A) Background*

Penal Code §12276.1 defines certain semiautomatic centerfire rifles as "assault weapons" that are prohibited from being manufactured, transported or possessed in California on penalty of a felony. One definition of "assault weapon" hinges on whether or not a semiautomatic centerfire rifle has a "detachable magazine" **and** any of a list of prohibited features (such as a pistol grip, telescoping stock or flash hider).

---

[2] The "CTA Letter" applies to all firearms manufacturers and sellers regulated by BoF, "This letter is in response to your request dated September 25, 2008 for advice about whether it would be legal to sell a particular rifle in California." *"CTA Letter"*, para 1.
[3] "[I]t is unclear whether such a configuration negates the rifle's **'capacity to accept' a detachable magazine**. Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a fixed, removable magazine can also be considered to have the 'capacity to accept a detachable magazine,' we are unable to declare rifles configured with the 'Prince 50 Kit' or 'bullet button' to be legal…" *"CTA Letter"*, para 5 (emphasis added).
[4] "[I]t is unclear whether such a configuration negates the rifle's **'capacity to accept' a detachable magazine**." *"CTA Letter"*, para 5 (emphasis added).
[5] AB-2728 which passed in 2006 and became effective January 1, 2007 removed the only unrelated exception to the APA that the BOF had in the Penal Code relating to firearms.

Gene Hoffman                                    Page 4                                    2/25/2009
The Calguns Foundation                    "Capacity To Accept" Underground Regulation

However, such prohibited features are perfectly legal under Penal Code §12276.1 as long as the rifle has a fixed magazine (i.e., does not have a "detachable magazine").

BoF (then known as The Department of Firearms) conducted a regulatory process in compliance with the APA that resulted in the enactment of 11 C.C.R. 5469 (the "2000 Rulemaking".)

Part of this rulemaking process addressed the exact definition of fixed magazine vs. "detachable magazine', as will be shown *infra*.

In an attempt to make an end-run around the meaning of the law that defines the nature and scope of fixed magazines, the BoF recently promulgated an underground regulation that attempted to require permanence for any non detachable or "fixed magazine" rifle. Mr. Hoffman petitioned OAL in a letter dated July 11, 2007 to review that underground regulation. OAL accepted that petition for review and assigned it a reference number of CTU-07-0712-01. BoF subsequently withdrew the "permanence" underground regulation in a questionably worded certification letter to OAL from Attorney General Brown dated September 20, 2007.

While BoF appears to be complying with its certification that it will not illegally take the position that permanence is required for a fixed magazine, BoF has begun to promulgate a new interpretation of the phrase "capacity to accept a detachable magazine" that is in conflict with its own previous interpretations and is incorrect as a matter of law.

*B) The Current Definition of "Detachable Magazine" Is Not Altered By The Phrase "Capacity To Accept"*

<u>*The Phrase "Non-detachable" Applies to Rifles, not to Magazines*</u>

> Regarding your question about using the "Prince 50 Kit" it is our understanding that such a device is designed to temporarily attach a magazine to a rifle, but allow the magazine to be removed from the rifle with the use of a tool. While there is no question that such a configuration would **render the magazine** of a rifle to be non-detachable, it is unclear whether such a configuration negates the **rifle's "capacity to accept" a detachable magazine**.
>
> **- Attachment A**   *[emphasis added]*

First, when BoF states, "there is no question that such a configuration would **render the magazine** of a rifle to be non-detachable," they misinterpret the actual test in the Penal Code. To wit, PC §12276.1(a)(1) states clearly that the "non-detachable" nature refers to <u>rifles</u>, not to <u>magazines</u>.

The statute reads in relevant part, "[a] semiautomatic, **centerfire rifle** *that* has the capacity to accept a detachable magazine." The word "*that*" refers to "a … rifle" and **not**

a magazine. Once the rifle no longer has the capacity to accept a "detachable magazine" as that term is defined in 11 C.C.R.[6], it can no longer be defined as an "assault weapon" for purposes of the Penal Code.[7]

### *The Penal Code and C.C.R are Quite Clear Regarding Capacity to Accept*

> . . . it is unclear whether such a configuration negates the rifle's "capacity to accept" a detachable magazine. Since there are no **statutes**, case law, or **regulations** concerning whether a rifle that is loaded with a fixed, removable magazine can also be considered to have the "capacity to accept a detachable magazine," we are unable to declare rifles configured with the "Prince 50 Kit" or "bullet button" to be legal or illegal.
>
> **Attachment A**  *[emphasis added]*

Second, BoF states that it is "unclear whether such a configuration negates the rifle's 'capacity to accept' a detachable magazine." However, the Penal Code and the C.C.R. are both quite clear on the matter.

To ascertain the plain meaning of the statute, as modified by BoF's own APA-compliant rulemaking, one merely substitutes the appropriate definition from 11 C.C.R. 5469 into the text of PC §12276.1(a)(1) as follows:

> **12276.1.**  (a) Notwithstanding Section 12276, "assault weapon" shall also mean any of the following:
>
> (1)  A semiautomatic, centerfire rifle that has the capacity to accept **any ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required**.[8] A bullet or ammunition cartridge is considered a tool.  [and] any of the following..
>
> *[Emphasis Added]*

Contrary to BoF's attempt to assert that there is no statute or regulation on point, there in fact is a statute **and** a validly adopted regulation directly on point.

A rifle correctly configured with a "Prince 50 Kit" or "bullet button" device simply does not have the capacity to accept any ammunition feeding device that can be removed

---

[6]  Section 5469 defines "detachable magazine" as "any ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required."
[7]  Assuming that it is at least 30 inches long and does not have a fixed magazine capable of holding more than 10 rounds.
[8]  11 C.C.R. 5469.

readily from the firearm with neither disassembly of the firearm action nor use of a tool being required.

### *"Fixed Removable Magazines" were Contemplated by the 2000 Rulemaking*

> Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a **fixed, removable magazine** can also be considered to have the "capacity to accept a detachable magazine," we are unable to declare rifles configured with the "Prince 50 Kit" or "bullet button" to be legal or illegal.
>
> **Attachment A**  *[emphasis added]*

Third, the BoF's own 2000 Rulemaking that lead to 11 C.C.R. 5469 shows that BoF fully contemplated "fixed removable magazines", in the Final Statement of Reasons:

> Comment
>
> A1.12 - The SKS rifle with a detachable magazine cannot be changed without using a bullet tip as a tool, thus the regulations conflict with the specific listing of SKS rifles with detachable magazines in the Roberti-Roos Assault Weapons Control Act.  DOJ has no authority to contradict existing law.
>
> Response
>
> The Department disagrees with the comment because any magazine that requires the use of a bullet or any other tool for its removal is a **fixed magazine**, not a detachable magazine.  The SKS with a true detachable magazine does not require a bullet or any other tool to remove and is a controlled assault weapon under Penal Code section 12276.  Identifying a bullet as a tool allows for the proper categorization of an SKS with a fixed magazine.  **Therefore, the SKS referred to in the comment has a fixed, not detachable magazine**.
>
> *[Emphasis added]*

If it is true that BoF cannot determine that a rifle with a "fixed removable magazine" is legal, then how can any member of the public determine if the SKS that they thought was legally owned is in fact an "SKS with detachable magazine" long prohibited by the Penal Code?

In reality, both the traditional SKS with a non-detachable magazine and a semiautomatic centerfire rifle with a "bullet button" device installed are functionally identical as to their magazine function.  It is an underground regulation to attempt to claim that either or both are prohibited.

Any attempt to assert that SKS rifles are prohibited would also be an **unadoptable regulation,** as the BoF does not have the authority to contradict existing law as BoF noted in the 2000 Rulemaking.

### *To Declare a Rifle Legal is Not the Same as Promulgating an Underground Regulation*

Finally, BoF's assertion that to declare a rifle legal would amount to an underground regulation, is incorrect as a matter of law.

Government Code Section 11340.9(f) exempts any rule or interpretation that would be considered, "[a] regulation that embodies the only legally tenable interpretation of a provision of law." Correctly installed, a rifle equipped with a "Prince 50 Kit" or a "bullet button" device follows the only legally tenable interpretation of PC §12276.1(a)(1) and 11 C.C.R. 5469. Therefore, it is within the authority of BoF to declare via advisory letter that rifles so equipped are in fact not "assault weapons."

PC §12276.5 (c) requires the BoF to adopt rules and regulations that are necessary and proper to carry out the purposes and intent of the section. If the agency tasked with interpreting the statutory scheme finds the scheme "**unclear**," then how can District Attorneys, law enforcement agencies, and their personnel, courts, or the general public determine what is or is not an "assault weapon?"

### *Conclusion*

The attempt by BoF to legally embellish upon its own validly adopted C.C.R. provisions is specifically prohibited by the APA as interpreted by the California courts – see *Union of American Physicians and Dentists v. Kizer* (1990) 223 Cal.App.3d 490, 272 Cal.Rptr. 886.


**6. The petition raises an issue of considerable public importance requiring prompt resolution.**

Owners and sellers of these rifles are now unclear whether they can simply follow the law **as written** in the Penal Code and the C.C.R. or whether they have to take **additional and expensive steps** to modify their rifles comply with the law. Rifle owners have been and continue to be arrested and their cases have taken additional time and expense for both citizens and District Attorneys to resolve due to confusion caused by the BoF's underground regulation of the phrase "capacity to accept a detachable magazine" in Penal Code §12276.1 (a) (1) and 11 C.C.R. 5469.[9]

---

[9] The Calguns Foundation has provided, and continues to provide, technical and financial assistance to individual defendants who have been arrested for possession of assault rifles. In four (4) recent cases in Northern California (that the Foundation has been associated with) the charges were dismissed and/or the D.A. declined to file a case after it was pointed out that tools were required to remove the magazines from the rifles. In at least one case, an individual had to post a $60,000 bond ($6,000 in non-refundable cash to a

Of additional concern are the rifle owners who relied upon the 2000 Rulemaking to clarify whether they actually had to register their rifles as assault weapons based on the definition in 11 CCR, Section 5469 (a)[10]. Those who took the plain language of the law to mean that they did not have to alter their rifle did not take the opportunity to register during the limited window of time in 2000, as they thought their rifles were exempt (since those rifles had a fixed magazine as those are defined in the 2000 Rulemaking).

These people are now in a constitutionally difficult position as they are either unintentional felons or are forced by the BoF's underground regulation to make expensive changes to their property (and be deprived thereof in contravention to their 5th Amendment rights and their right to be free from "*ex-post-facto*" law).

As outlined above, the "CTA Letter" most certainly meets the criteria of an underground regulation. The "CTA Letter" specifically and directly contradicts existing law. The "CTA Letter" contradicts and attempts to confuse the BoF's own legitimately adopted regulations and previous statutory interpretation.

## 7. Attachments

Attached as Attachment A hereto is a true and correct copy of the "CTA Letter."
Attached as Attachment B hereto is a true and correct copy of a letter from Mr. Mike Badella of Dolorian Capital, Inc. to BoF.

---

bail bondsman) to get out of jail on a felony charge of Assault Weapon possession. This was a case where the D.A. declined to even file criminal charges after the arrest, but the individual is still out the $6,000 paid to the bondsman.

[10] Title 11 CCR 5469: "'detachable magazine' means any ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required. A bullet or ammunition cartridge is considered a tool…"

## 8. Certification

I certify that I have submitted a copy of this petition and all its attachments to:

Wilfredo Cid
Director
Bureau of Firearms
4949 Broadway
Sacramento, CA 95820
916-263-4887

I certify that all of the above information is true and correct to the best of my knowledge.


_____						_____February 25, 2009____
    Gene Hoffman, Jr.								Date

# ATTACHMENT A

**EDMUND G. BROWN JR.**
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

DIVISION OF LAW ENFORCEMENT
P.O. BOX 160487
SACRAMENTO, CA 95816-0487
(916) 263-0699
Facsimile: (916) 263-0676

September 29, 2008

Mr. Mike Badella
Dolorian Capital, Inc.
191 West Shaw Ave., Suite 205-A
Fresno, CA 93704

Re: Request for Approval of HAS-15 Rifle

Dear Mr. Badella:

    This letter is in response to your request dated September 25, 2008 for advice about whether it would be legal to sell a particular rifle in California.

    The California Department of Justice (DOJ) has never had the legal duty or authority to *approve* a rifle, shotgun, or pistol for sale in the state on the basis that the firearm is not an assault weapon. At one time, DOJ had the legal authority pursuant to Section 12276.5, to declare a firearm to be a "series" assault weapon, or to obtain a court order that a firearm was an assault weapon. (See *Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1155.) However, that authority was revoked by statute in 2007. (Stats. 2006, ch. 793 (AB 2728).) Under current law, DOJ has the duty to prepare the Assault Weapons Guide and distribute the guide to law enforcement. (§ 12276.5, subd. (a).) DOJ's duty is essentially administrative. Consequently, determining what types of firearms are prohibited pursuant to Section 12276.1 is for the courts. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

    An agency is prohibited from adopting a regulation -- an interpretation of the law intended for general application -- unless that regulation has been formally adopted pursuant to the Administrative Procedures Act (APA). (Gov. Code, §§ 11340.5, subd. (a), 11342.600.) An interpretation of the law intended for general application that is not adopted in compliance with the APA is an illegal "underground regulation" that is entitled to no weight by the courts of the state. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581-582.) Rather, an interpretive policy is void when promulgated in violation of the APA. (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 571.)

    Although DOJ cannot adopt general policies about whether a class or type of firearm is an assault weapon without complying with the APA, we can provide you with general information about California law governing assault weapons. A semiautomatic centerfire rifle with the "capacity to accept a detachable magazine" and any of a number

Mr. Badella
September 29, 2008
Page 2

of specified features, such as a "pistol grip that protrudes conspicuously below the action of the weapon," is an "assault weapon" under California law. (§ 12276.1, subd. (a).) DOJ regulations clarify that a "detachable magazine" is "any ammunition feeding device that can be removed with neither disassembly of the action nor use of a tool being required." (Cal. Code Regs., tit. 11, §978.20, subd. (b).)

Regarding your question about using the "Prince 50 Kit," it is our understanding that such a device is designed to temporarily attach a magazine to a rifle, but allow the magazine to be removed from the rifle with the use of a tool. While there is no question that such a configuration would render the magazine of a rifle to be non-detachable, it is unclear whether such a configuration negates the rifle's "capacity to accept" a detachable magazine. Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a fixed, removable magazine can also be considered to have the "capacity to accept a detachable magazine," we are unable to declare rifles configured with the "Prince 50 Kit" or "bullet button" to be legal or illegal. To do so without a regulation would create an illegal "underground regulation."

I hope this information is helpful. Please feel free to contact me again if you need further clarification.

Sincerely,

ALISON Y. MERRILEES
Deputy Attorney General
Bureau of Firearms


For EDMUND G. BROWN JR.
Attorney General

# ATTACHMENT B



September 25, 2008

California Department of Justice Bureau of Firearms
Alison Merrilees
POB 160487
Sacramento, CA 95816

We are sales representatives for High Standard Manufacturing Company, Inc. We would like to start selling a California legal variant of the High Standard HSA-15 rifle. We are planning on producing the rifle with a fixed 10 round magazine utilizing the Prince50 kit. I have attached a copy of the Prince50 Designs Instructions.

Would this rifle be legal to sale in the state of California? If not, what would it take to make it a California legal rifle?

Thank you for your time,

*Mike Badella*

Mike Badella
Dolarian Capital, Inc.
191 West Shaw Avenue
Suite 205-A
Fresno, CA 93704
559-243-0117 x207
559-243-0126 FAX

Corporate
191 W. Shaw Avenue
Suite 205-A
Fresno, CA 93704

Eastern Europe
1, Vrbitskogo Str
Kyiv 01021
Ukraine