IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK AARON HAYNIE, BRENDAN JOHN RICHARDS, THE CALGUNS FOUNDATION, INC. and THE SECOND AMENDMENT FOUNDATION, INC.<br><br>    Plaintiffs,<br><br>   v.<br><br>KAMALA HARRIS, ATTORNEY GENERAL OF CALIFORNIA and CALIFORNIA DEPARTMENT OF JUSTICE<br><br>    Defendants.                      / | No. C 10-1255 SI and No. CV 11-2493 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING LEAVE TO AMEND** |

    Now before the Court is defendants' motion to dismiss plaintiffs' claims for prospective injunctive and declaratory relief in *Haynie v. Harris* and *Richards v. Harris*. In both cases, plaintiffs seek, *inter alia*, an order compelling the defendant California Department of Justice to issue appropriate memorandums and/or bulletins to the State's District Attorneys and law enforcement agencies to prevent wrongful arrests. For the reasons set forth below, the Court GRANTS defendants' motion to dismiss those claims for declaratory and prospective injunctive relief, and GRANTS plaintiffs leave to amend.

**BACKGROUND**

    Plaintiffs Mark Aaron Haynie and Brendan John Richards filed separate lawsuits against California Attorney General Kamala Harris and the California Department of Justice ("DOJ") alleging that they were wrongfully arrested for lawful possession of certain weapons that were mistakenly identified by California law enforcement officials as assault weapons under the California Assault

Weapons Control Act ("AWCA"), Cal. Penal Code §§ 12275-12290. Both plaintiffs claim that, because the DOJ will not issue a bulletin clarifying that weapons with a "bullet button" are legal to possess, they fear similar wrongful arrests in the future. Haynie FAC (hereinafter "FAC") ¶ 45; Richards Compl. (hereinafter "Compl.") ¶ 52. The Calguns Foundation and the Second Amendment Foundation are also plaintiffs in both suits. The Calguns Foundation is a "non-profit organization" which "support[s] the California firearms community by promoting education . . . about California and federal firearms laws, rights and privileges, and defend[s] and protect[s] the civil rights of California gun owners." FAC ¶ 3. The purposes of the Second Amendment Foundation, a "non-profit membership organization," include "education, research, publishing and legal action focusing on the Constitutional right to privately owned [sic] and possess firearms, and the consequences of gun control." *Id.* ¶ 4. The Calguns Foundation contributed funds for Haynie's and Richards' legal representation during their criminal proceedings. FAC ¶¶ 3, 23; Compl. ¶ 39.

**I.** *Haynie*

Plaintiff Mark Aaron Haynie was arrested by officers of the Pleasanton Police Department on February 7, 2009 for possession of an assault weapon under California Penal Code § 12280 *et seq.* FAC ¶ 12. Haynie paid $6,000 to a bail bondsman. *Id.* ¶ 13. Haynie's rifle had a "bullet button" which makes the magazine of the rifle non-detachable. *Id.* ¶ 15. His rifle was not listed in California Penal Code § 12276 and could not be identified under Penal Code § 12276.1, the sections of the AWCA which define "assault weapon." *Id.* ¶¶ 14-15. The Alameda County District Attorney's Office declined to file an information against Haynie, and the matter was dropped from the Alameda County Superior Court Criminal Docket on March 27, 2009. *Id.* ¶ 18. Haynie was released on that same date. *Id.* ¶ 19. Haynie obtained a finding of factual innocence under California Penal Code § 851.8 on October 21, 2009. *Id.* ¶ 22. The Calguns Foundation paid for Haynie's legal representation. *Id.* ¶ 23.

Haynie originally brought suit against the City of Pleasanton, the City of Pleasanton Police Department, and Doe defendants seeking damages, but the City and police department were dismissed from the case after payment to Haynie of $6,000 and a release of all other claims. *Id.* ¶ 25. Haynie alleges that the DOJ is the state agency responsible for the training and education of law enforcement

1 agencies with respect to assault weapons, and that because the DOJ will not issue a statewide bulletin
2 regarding the bullet button, he "has a reasonable fear that he may suffer wrongful arrests in the future."
3 *Id.* ¶¶ 26, 33, 35. Haynie also alleges that it would "not be unduly burdensome" for the DOJ to issue
4 a bulletin "regarding the technology of the bullet button and to develop a field test to insure state-wide
5 compliance with the law." *Id.* ¶ 34.

6 In *Haynie*, plaintiffs seek (1) prospective injunctive relief under 42 U.S.C. § 1983 to prevent
7 future violations of Fourth Amendment rights; (2) prospective injunctive relief under 42 U.S.C. § 1983
8 to prevent future violations of Second Amendment rights; and (3) prospective injunctive relief requiring
9 the DOJ and Harris to comply with their duties under California Penal Code §§ 12276.5 and 12289.
10 FAC ¶¶ 37-44. Specifically, plaintiffs request that the Court issue a "declaratory judgment and/or
11 prospective injunctive relief" to compel Harris and the DOJ to "issue appropriate memorandums and/or
12 bulletins [regarding the bullet button] to the State's District Attorneys and Law Enforcement Agencies
13 to prevent wrongful arrests." FAC ¶ 45(A).

14

15 **II.** *Richards*

16 Plaintiff Brendan John Richards was arrested by Rohnert Park police officer Dean Becker on
17 May 20, 2010 for possession of an unregistered assault weapon under California Penal Code § 12280(b).
18 Richards Compl. ¶¶ 17, 27. Officer Becker also seized two pistols and one rifle from Richards on that
19 day. *Id.* ¶ 18. Richards spent six days in jail and was released after paying a $1,400 non-refundable fee
20 to a bondsman. *Id.* ¶ 29. The Calguns Foundation paid approximately $11,000 for Richards' legal
21 representation. *Id.* ¶ 39. On September 9, 2010, the Sonoma County District Attorney's Office
22 dismissed all charges against Richards. *Id.* ¶ 30. The dismissal was based on a report by the DOJ
23 Bureau of Forensic Services finding that none of the firearms confiscated from Richards were assault
24 weapons as defined by the California Penal Code or California regulations. *Id.* ¶ 31. One of the
25 firearms deemed to not be an assault weapon under the Penal Code "had a properly installed bullet
26 button, thus rendering the firearm incapable of accepting a detachable magazine that could only be
27 removed from the gun by the use of a tool." *Id.* ¶ 31(a).

28 Richards' claim for relief is broader than Haynie's claim. Richards claims that because the DOJ

3

will not issue a bulletin to prevent future arrests, California Penal Code § 12276.1 is unconstitutionally vague as it was applied to Richards, and Richards has a "continuing reasonable fear that he may suffer wrongful arrests in the future." *Id.* ¶ 51. Richards and the associational plaintiffs seek (1) a declaratory judgment and/or injunctive relief that California Penal Code § 12276.1 is unconstitutional; (2) a declaratory judgment and/or injunctive relief that California Penal Code § 12031(e) is unconstitutional because "[m]ere possession of a firearm, . . . , when otherwise lawful, cannot support a finding of probable cause to believe a crime has been committed, such that the Fourth Amendment's warrant requirement can be legislatively disregarded"; (3) a declaratory judgment and/or prospective injunctive relief to compel Harris and the DOJ to "issue appropriate memorandums and/or bulletins to the State's District Attorneys and Law Enforcement Agencies to prevent wrongful arrests"; (4) injunctive relief against the City of Rohnert Park and Officer Becker requiring amendments to policies and training to address identification of assault weapons under California law and compliance with the Fourth Amendment's requirements for lawful searches; and (5) damages from the City of Rohnert Park and Officer Becker. *See id.* ¶¶ 53-67.

On June 20, 2011, plaintiffs and defendants Harris and DOJ filed a stipulation and proposed order consolidating *Haynie v. Harris* and *Richards v. Harris*. The parties stipulated that "[b]oth *Haynie* and *Richards* present the same legal issues regarding California's Assault Weapons Control Act and the Department of Justice's role in enforcing it." Docket No. 38 in CV 10-1255 p. 2. The parties also stipulated that "the legal defenses raised by the State Defendants in their Motion to Dismiss in the *Haynie* matter are identical to those they would raise in a Motion to Dismiss in *Richards*, namely, standing and subject matter jurisdiction." *Id.* The parties further stipulated that the opposition and reply in both *Haynie* and *Richards* would be "substantially identical" and that the facts alleged in the *Haynie* FAC and the *Richards* Complaint "can be used to support arguments in either or both cases." *Id.* On June 21, 2011, the Court entered the stipulation and ordered the cases consolidated for hearing, pursuant to Federal Rule of Civil Procedure 42(a). The pending motion to dismiss pertains only to plaintiffs' claims against Harris and the DOJ.

4

**LEGAL STANDARDS**

**I.     Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re. Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

**II.    Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). Dismissal of a complaint may be based "on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In

5

answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

**DISCUSSION**

Defendants move to dismiss plaintiffs' claims for an order compelling the defendant California Department of Justice to issue appropriate memorandums and/or bulletins to the State's District Attorneys and law enforcement agencies to prevent wrongful arrests, arguing that plaintiffs do not meet either of the required components of standing for prospective equitable relief.[1] Defendants contend that plaintiffs (1) do not demonstrate a credible threat of future injury which is sufficiently concrete and particularized to meet the case or controversy requirement of Article III and (2) do not demonstrate an imminent threat of irreparable harm, a separate jurisdictional requirement plaintiffs must meet when seeking equitable relief. In addition, defendants argue that plaintiffs' failure to establish a likelihood of imminent injury requires dismissal of their related declaratory relief claim because plaintiffs must establish a likelihood of imminent injury in order to present a ripe claim for declaratory relief. Defendants also argue that plaintiffs fail to allege facts sufficient to justify injunctive relief against a state official.

The DOJ has published an Assault Weapons Identification Guide indicating that weapons where a tool, such as a bullet, is needed to remove the magazine, the weapon is not considered a banned gun due to its detachable magazine. Defs' Mot. at 1. However, both Haynie and Richards claim that, because the DOJ will not issue a bulletin specifically regarding the technology of the bullet button, they have a reasonable fear that they may be wrongfully arrested in the future. FAC ¶ 35; Compl. ¶ 51. The Calguns Foundation and the Second Amendment Foundation also claim that because the DOJ will not issue a bulletin, they fear that their members will be subject to wrongful arrests. FAC ¶ 36; Compl. ¶ 52.

---

[1] Defendants' motion does not contend that the *Richards* plaintiffs lack standing to challenge the constitutionality of the statute, and those claims are not addressed in or affected by this order. Instead, defendants' motion is more narrowly focused on whether plaintiffs in both cases have standing to seek prospective injunctive relief in the form of an order compelling the defendant California Department of Justice to issue appropriate memorandums and/or bulletins to the State's District Attorneys and law enforcement agencies to prevent wrongful arrests.

6

Plaintiffs' opposition to defendants' motion does not address any of defendants' arguments about standing to seek the prospective injunctive relief at issue. Rather, plaintiffs assert that the DOJ is simultaneously advising California residents that possession of certain semi-automatic firearms is legal and warning that any of the State's District Attorneys may come to a different conclusion and prosecute them for possession of the firearms, resulting in "the chilling of a fundamental right." Pls' Opp'n at 1-2. Plaintiffs claim that there have been "a half-dozen cases, related to bullet buttons or magazine locks, in which Calguns Foundation Inc., assisted in the defense of people wrongfully accused of possessing legal firearms." *Id.* One of the cases cited is *Richards*. *Id.* Plaintiffs argue that the Court has federal question jurisdiction because they are seeking to vindicate a constitutional right. They assert that there is confusion in the law enforcement community about the definition of detachable magazines and it is therefore not unreasonable for Haynie, the Calguns Foundation, and the Second Amendment Foundation to claim that there is a real threat of future illegal seizures of firearms. Plaintiffs set out "four separate theories for injunctive relief," including alleged duties of defendants Harris and the DOJ to carry out certain sections of the California Penal Code, provide training and outreach to law enforcement, avoid filing of criminal charges not supported by probable cause and prevent wrongful arrests, and to "clear up the confusion" about the AWCA. *Id.* at ¶. 9-10.

Calguns Foundation Chairman Gene Hoffman also filed a declaration in opposition to the motion to dismiss. Attached to the declaration are seven letters from 2005 and 2006 on DOJ letterhead which he claims "all follow a similar pattern of declaring a certain gun part (receiver) legal to import into California and then warning the recipient that California's 58 District Attorneys may have a different opinion that could result in prosecution." Hoffman Decl. ¶ 6; *see* Ex. A. Hoffman also attaches DOJ notices which he claims contradict the California Penal Code, California regulations, and the DOJ's Assault Weapons Identification Guide – which he says do not require permanent alteration of weapons – because the notices "stat[e] that owners of a firearm with features had to, 'permanently alter the firearm so that it cannot accept a detachable magazine.'" Hoffman Decl. ¶ 7 & Ex. B. The notices were posted on the DOJ's website and detail the Department's policy regarding series-style weapons not identified as assault weapons by the Department. *See id.* Ex. B. Hoffman attaches several other DOJ and Office of Administrative Law (OAL) communications, including a DOJ e-mail, internal memo to

7

phone staff, Notice of Proposed Rulemaking, "Text of Modified Regulations," 2008 letters from DOJ indicating an inability to declare weapons with bullet buttons legal or illegal, and a 2007 letter from OAL indicating suspension of its review of DOJ regulations, which Hoffman claims demonstrate misinformation, confusion, and uncertainty about the legality of weapons with a bullet button. Hoffman Decl. ¶¶ 8-18 & Ex. C, D, E, F, G, H, I, J, K. Finally, Hoffman documents six incidents, including Richards' experience, in which the Calguns Foundation defended alleged wrongful arrests, charges, or seizure of weapons under the AWCA. *See* Hoffman Decl. ¶ 20.

Defendants respond, *inter alia*, that it is appropriate for the Attorney General's staff to express an informed opinion about the legality of certain weapons while warning the public that other prosecutors may disagree. Defendants note that the DOJ letters from 2005 and 2006 attached to Hoffman's declaration "explicitly state they are expressing 'an opinion' about the legality of certain weapons" and that the opinions of Attorneys General are not binding on the courts. *Id.* & Letter from Alison Merrilees to Amanda Sitar (Dec. 12, 2005) in Ex. A; *see also Lucas v. Board of Trustees*, 18 Cal. App. 3d 988, 991-92 (1971) ("The opinions of the Attorney General, of course, are not binding upon the courts. They are, however, entitled to much weight.") (internal citation omitted). Defendants also cite Ninth Circuit case law indicating that the Attorney General does not have complete control over District Attorneys in support of their argument that DOJ letters that express an opinion about the legality of certain weapons but warn the public that other prosecutors may disagree are appropriate. *See Brewster v. Shasta County*, 275 F.3d 803, 809 (9th Cir. 2001) (holding that the "general law enforcement authority" provided to the Attorney General by Article 5, § 13 of the California Constitution "'does not contemplate absolute control and direction' of the officials subject to the Attorney General's supervision.") (internal citation omitted).

**I.      Haynie and Richards lack standing to seek an order compelling DOJ to issue a memorandum to prevent wrongful arrests**

The Constitution of the United States limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559 (1992). Standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Id.* at 560 (citation omitted).

Before a federal court can consider the merits of a legal claim, the party seeking to invoke the jurisdiction of the court must establish the requisite standing to sue. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). The threshold inquiry into standing "'in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal . . . .'" *Id.* at 155.

Over the years, Supreme Court cases have established that:

> the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal citations and quotations omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of the litigation." *Id.* (internal citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," for on a motion to dismiss, courts "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (internal citations omitted). Plaintiffs seeking equitable relief must also show "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (internal citation omitted).

Defendants rely primarily on *City of Los Angeles v. Lyons* to argue that plaintiffs lack standing to seek the prospective injunctive relief at issue. In *Lyons*, the Supreme Court considered a complaint seeking damages and injunctive and declaratory relief against the City of Los Angeles and four of its police officers. The plaintiff had been placed in a chokehold by Los Angeles police after being stopped for a vehicle code violation. *Id.* at 97-98. Lyons sought a preliminary and permanent injunction against the city barring the use of the chokeholds. *Id.* at 98. Lyons alleged that, pursuant to the authorization of the City, Los Angeles police officers "'regularly and routinely'" applied the challenged chokeholds

9

in "'innumerable situations'"; that "numerous" people had been injured as a result of the use of the chokeholds; that he and other people were threatened with irreparable injury in the form of bodily injury and death; and that he justifiably feared that any contact with Los Angeles police might result in him being "'choked and strangled to death without provocation, justification, or other legal excuse.'" *Id.* at 98 (quoting Lyons' complaint).

The Court found that Lyons had a claim for damages that appeared to meet all the Article III standing requirements, but held that he did not meet the standard for seeking equitable relief in federal court because there was no showing of any real or immediate threat that he would be wronged again. "The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again . . . .'" *Id.* at 111. The Court reiterated a previous holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102 (internal citation and quotation marks omitted). The Court stated that the allegations in the complaint that police in Los Angeles "routinely" applied the chokeholds without provocation or other justification fell "far short" of the allegations that would be necessary to establish a case or controversy between the parties. *Id.* at 105. In order to establish an actual case or controversy, the Court stated that Lyons would "have had not only to allege that he would have another encounter with police but also to make the incredible assertion either (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter . . . , or (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 105-06 (emphasis in original). The Court held that even though there may inevitably be "certain instances" in which strangleholds will be illegally applied and injury and death unconstitutionally inflicted on the victim, it was no more than "conjecture" to suggest that in every encounter between the police and a citizen, the police would act unconstitutionally and inflict injury without provocation or legal excuse, and it was "no more than speculation" to claim that Lyons himself would have a similar encounter with police in the future. *Id.* at 108. "If Lyons has made no showing that he is realistically threatened by a repetition of his experience of October 1976, then he has not met the requirements for seeking an injunction in a federal court . . . ." *Id.* at 109. Because of the "speculative nature of Lyons' claim of future injury," the

10

prerequisite showing of "a 'likelihood of substantial and immediate irreparable injury'" for equitable relief was not fulfilled, and he did not have standing to seek an injunction in federal court. *Id.* at 111.

Under *Lyons*, plaintiffs' allegations that they fear future wrongful arrests do not demonstrate a case or controversy and fail to establish standing to seek an order compelling DOJ to issue a memorandum to prevent wrongful arrests. *Lyons* holds that past exposure to illegal conduct without any continuing, current adverse effects is not enough to show a case or controversy for injunctive relief, and that even allegation of routine misconduct is not sufficient. *See Lyons*, 461 U.S. at 102, 105. Under the *Lyons* standard, to show a real and immediate threat and demonstrate a case or controversy, Haynie and Richards would have to allege either that *all* law enforcement officers in California *always* arrest any citizen they come into contact with who is lawfully in possession of a weapon with a bullet button, or that the DOJ has ordered or authorized California law enforcement officials to act in such a manner. *See id.* at 105-06.

Plaintiffs' opposition does not address any of defendants' arguments about standing, nor do plaintiffs attempt to distinguish *Lyons*. While detailing the past conduct of California law enforcement officials, neither Haynie nor Richards alleges that he has had any similar experiences since the incidents of February 7, 2009 and May 10, 2010, respectively, or that he has had any further contact with law enforcement officers which would demonstrate continuing, present adverse effects. Similarly, plaintiffs' assertion that there are "a half-dozen cases, related to bullet buttons or magazine locks, in which Calguns Foundation Inc., assisted in the defense of people wrongfully accused of possessing legal firearms," does not amount to an allegation that *all* law enforcement officers in California *always* wrongly arrest any citizen with whom they come into contact who is lawfully in possession of a weapon with a bullet button. *See* Pls' Opp'n ¶ 4(f).

Similarly, neither Haynie nor Richards alleges that Harris or the DOJ has ordered or authorized California law enforcement officers to arrest people in lawful possession of firearms with bullet buttons. Plaintiffs' claims that the "DOJ has been simultaneously advising residents of California that their possession of certain semi-automatic firearms is legal, while at the same time warning them that any one of the 58 of the State's District Attorneys might come to a different conclusion and prosecute them for ownership/possession of these same firearms," and that there is a "general state of confusion in the law

11

enforcement community about the definition of detachable magazines,"[2] is not tantamount to an allegation that DOJ has ordered law enforcement officials to arrest citizens lawfully in possession of weapons with bullet buttons.

Plaintiffs also fail to demonstrate a likelihood of substantial and immediate irreparable injury, a prerequisite for the type of equitable relief sought. As in *Lyons*, where the individual alleging that he had been choked by police five months earlier did "nothing to establish a real and immediate threat that he would again" be stopped for a traffic violation or any other offense and subjected to the same treatment, plaintiffs' complaints do not establish a real and immediate threat that they will again have an encounter with law enforcement officers who will wrongfully arrest them for lawful possession of guns with a bullet button. Just as it was "no more than speculation" for Lyons to claim he would have a similar encounter with police in the future, it is no more than speculation for Haynie and Richards to claim that they will have future encounters with law enforcement officers similar to their previous experiences. *See Lyons*, 461 U.S. at 108. These speculative claims do not show a likelihood of substantial and immediate irreparable injury. *See id.* at 111. Because Haynie and Richards do not demonstrate that they are "realistically threatened by a repetition" of their experiences, *Lyons*, 461 U.S. at 109, they do not meet the requirements for standing to seek an order compelling DOJ to issue a directive to prevent wrongful arrests. Accordingly, the Court GRANTS defendants' motion to dismiss plaintiffs' claims seeking such relief.

**II.     The Calguns Foundation and the Second Amendment Foundation lack associational standing to sue Harris and the DOJ for the injunctive relief at issue**

Associations have standing to sue on behalf of their members "only if (a) their members would otherwise have standing to sue in their own right; (b) the interests that the organizations seek to protect are germane to their purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130-31 (9th Cir. 1996) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977), superseded in part by statute as stated in *United Food & Commer. Workers Union*

---

[2] Pls' Opp'n at 1-2, 7.

*Local 751 v. Brown Group*, 517 U.S. 544 (1996)).

Because associations have standing to sue on behalf of their members "only if . . . their members would otherwise have standing to sue in their own right . . ." and because, for the reasons discussed above, Richards and Haynie fail to establish a case or controversy giving them standing to sue the Attorney General and DOJ for injunctive relief, it appears at this time that the Calguns Foundation and the Second Amendment Foundation similarly do not have standing to seek injunctive relief against Harris and the DOJ in this Court.[3] *See San Diego Cnty. Gun Rights Comm.*, 98 F.3d at 1130-31. Accordingly, the Court dismisses the associational plaintiffs' claims seeking an order compelling defendants to issue a memorandum to prevent wrongful arrests.

### III. Plaintiffs' related claims for declaratory relief are not ripe for adjudication

"Ripeness doctrine protects against premature adjudication of suits in which declaratory relief is sought." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (internal citation omitted). "In suits seeking both declaratory and injunctive relief against a defendant's continuing practices, the ripeness requirement serves the same function in limiting declaratory relief as the imminent-harm requirement serves in limiting injunctive relief." *Id.* In *Texas v. United States*, the Supreme Court held that, "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted)).

As discussed above, it is mere speculation that Haynie or Richards will have another encounter with police and be unlawfully arrested as a result of such a hypothetical encounter. Because claims for declaratory relief are not ripe for adjudication if they rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," and because future wrongful arrests of Haynie or

---

[3] On August 5, 2011, plaintiffs filed a Notice of Supplemental Authority and attached *Ezell v. City of Chicago*, 2011 U.S. App. LEXIS 14108 (7th Cir. July 6, 2011). Plaintiffs assert that this case addresses "institutional standing." Notice of Supplemental Authority p. 2. In *Ezell*, the Seventh Circuit Court of Appeals held that organizational plaintiffs, including the Second Amendment Foundation, had standing to seek a declaration that the City of Chicago's ban on firing ranges was invalid and to seek an injunction blocking the ban's enforcement. However, unlike in the present case, in *Ezell* it was "clear the individual plaintiffs have standing." *Ezell*, U.S. App. LEXIS 14108 at *22-23 n. 7. *Ezell* does not change the Court's analysis of the associational plaintiffs' lack of standing.

13

Richards may never occur or may not occur as plaintiffs "fear," plaintiffs' claims for declaratory relief, to the extent they are concomitant with plaintiffs' claims for injunctive relief discussed *supra*, are not ripe for adjudication. *See Hodgers-Durgin*, 199 F.3d at 1044 (internal quotations and citations omitted).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss plaintiffs' claims for prospective injunctive and declaratory relief regarding the issuance of a bulletin to prevent wrongful arrests. Plaintiffs are directed to file a consolidated amended complaint by November 4, 2011. If plaintiffs wish to pursue the dismissed claims for injunctive and declaratory relief, they should plead facts demonstrating that they have standing to do so in the consolidated amended complaint. **The Case Management Conference currently scheduled for November 4, 2011 is continued to January 13, 2012.**

**IT IS SO ORDERED.**

Dated: October 22, 2011

SUSAN ILLSTON
United States District Judge