1  Donald E. J. Kilmer, Jr. [SBN: 179986]
   LAW OFFICES OF DONALD KILMER
2  1645 Willow Street, Suite 150
   San Jose, California 95125
3  Voice: (408) 264-8489
   Fax:   (408) 264-8487
4  E-Mail: Don@DKLawOffice.com

5  Jason A. Davis [SBN: 224250]
   Davis & Associates
6  27281 Las Ramblas, Suite 200
   Mission Viejo, CA 92691
7  Voice: (949) 310-0817
   Fax:   (949) 288-6894
8  E-Mail: Jason@CalGunLawyers.com

9  Attorneys for Plaintiffs

10              UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12  MARK AARON HAYNIE, BRENDAN       | Case Nos.:  3:10-CV-01255 SI[1]
    JOHN RICHARDS, THE CALGUNS       |             3:11-CV-02493 SI[2]
13  FOUNDATION, INC., and THE        |
    SECOND AMENDMENT                 | **AMENDED CONSOLIDATED**
14  FOUNDATION, INC.,                | **COMPLAINT**
15          Plaintiffs,              | DEMAND FOR JURY TRIAL
16             vs.                   | 42 U.S.C. §§ 1983, 1988
17                                   | SECOND AMENDMENT
18  KAMALA HARRIS, Attorney General  | FOURTH AMENDMENT
    of California, CALIFORNIA        |
19  DEPARTMENT OF JUSTICE, CITY      | FOURTEENTH AMENDMENT
    OF ROHNERT PARK, OFFICER         |
20  DEAN BECKER (RP134) and DOES     |
21  1 TO 20,                         |
22          Defendants.              |

23

24  _____

25      [1] This amended complaint would be a Second Amended Complaint in *Haynie v. Harris*.
26  The Court ordered the Plaintiffs to file a consolidated complaint in its Order Granting
    Defendants' Motion to Dismiss and Granting Leave to Amend.  Doc #42 in *Haynie v. Harris*.

27      [2] This amended complaint would be a First Amended Complaint in *Richards v. Harris*.
28  The Court ordered the Plaintiffs to file a consolidated complaint in its Order Granting
    Defendants' Motion to Dismiss and Granting Leave to Amend.  Doc #15 in *Richards v. Harris*.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**INTRODUCTION**

1.     Plaintiff MARK AARON HAYNIE was wrongfully arrested for possession of an Assault Weapon and required to make bail in a state criminal case in which he was found to be factually innocent.  He is associated with and exercises membership rights in both the THE CALGUNS FOUNDATION, INC., and THE SECOND AMENDMENT FOUNDATION, INC.

2.     Plaintiff BRENDAN RICHARDS is an honorably discharged United States Marine who saw combat duty in Iraq.  He is associated with and exercises membership rights in both the THE CALGUNS FOUNDATION, INC., and THE SECOND AMENDMENT FOUNDATION, INC.

    a.     On May 20, 2010, RICHARDS was wrongfully arrested for possession of an Assault Weapon and spent six (6) days in the Sonoma County jail while his family tried to raise the funds for him to make bail in a state criminal case which was dismissed.  He was factually innocent of the charges brought.

    b.     On August 14, 2011, RICHARDS was wrongfully arrested a second time for possession of an Assault Weapon and spent four (4) days in the Sonoma County jail awaiting bail.  Again the charges against him were dismissed.  He was factually innocent of the charges brought.[3]

3.     Plaintiffs HAYNIE and RICHARDS, along with the Institutional Plaintiffs CALGUNS FOUNDATION, INC., and SECOND AMENDMENT FOUNDATION, INC., seek declaratory relief that the California Penal Codes

---

[3] The Motion to Dismiss brought by Defendants *Harris* and *California Department of Justice* was argued on August 5, 2011.  *Richards'* new arrest occurred on August 14, 2011, and the case was dismissed on September 19, 2011. Plaintiffs immediately brought this new development to the attention of the Defendants and asked if they would stipulate to a joint statement informing the Court of this new fact.  The Defendants declined that invitation and the Plaintiff was not aware of any authority for alleging new facts once a Rule 12 motion has been submitted to the Court.  A new case for wrongful arrest is being filed in this Court and a request to relate the cases will be made at the appropriate time.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

and Regulations defining Assault Weapons are unconstitutionally vague and ambiguous and therefore result in wrongful arrests and the chilling of a fundamental right to "keep and bear" arms of ordinary and common design.

4.    Plaintiff BRENDAN RICHARDS also seeks monetary damages and injunctive relief against the CITY OF ROHNERT PARK and OFFICER BECKER for unlawful seizure of his person and his firearms.

## PARTIES

5.    Plaintiff MARK AARON HAYNIE is a natural person and citizen of the United States and of the State of California and was at all material times a resident of Alameda County.

    a.    In a prior iteration of this action, HAYNIE had sued the City of Pleasanton and the Pleasanton Police Department.  Those defendants were dismissed after reaching a cash settlement with Plaintiff HAYNIE.

    b.    Plaintiff HAYNIE does not seek any remedies against Defendants ROHNERT PARK or OFFICER BECKER.

6.    Plaintiff BRENDAN RICHARDS is a natural person and citizen of the United States and of the State of California.  He is an honorably discharged United States Marine with six months of combat duty in Iraq.

7.    Plaintiff THE CALGUNS FOUNDATION, INC., (CGF) is a non-profit organization incorporated under the laws of California with its principal place of business in San Carlos, California. The purposes of CGF include supporting the California firearms community by promoting education for all stakeholders about California and federal firearms laws, rights and privileges, and defending and protecting the civil rights of California gun owners.  As part of CGF's mission to educate the public – and gun-owners in particular –  about developments in California's firearm laws, CGF assists in

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

the maintenance and contributes content to an internet site called Calguns.net.  [http://www.calguns.net/calgunforum/index.php]  On that website CGF informs its members and the public at large about pending civil and criminal cases, including but not limited to: arrests, convictions and appeals relating to California gun law.  The website itself contains messages, forums and various posts that document the concerns that California gun owners have about possible arrest, prosecution and conviction for running afoul of California's vague and ambiguous laws relating to so-called Assault Weapons.  CGF represents its members and supporters, which include California gun owners and Plaintiffs HAYNIE and RICHARDS. CGF brings this action on behalf of itself and its supporters, who possess all the indicia of membership.

8.    Plaintiff SECOND AMENDMENT FOUNDATION, INC., (SAF) is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellvue, Washtington.  SAF has over 650,000 members and supporters nationwide, including California.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately owned and possess firearms, and the consequences of gun control.  SAF brings this action on behalf of itself and its members.

9.    Defendant KAMALA HARRIS is the Attorney General of the State of California and she is obligated to supervise her agency and comply with all statutory duties under California Law.  She is charged with enforcing, interpreting and promulgating regulations regarding California's Assault Weapons Statutes. Furthermore, California Penal Code §§ 13500 *et seq.,* establishes a commission on Peace Officer Standards and Training that requires the DEPARTMENT OF JUSTICE, with the Attorney General as an *ex officio* member of the commission, which is to provide personnel, training

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

and training material to cities and counties to insure an effective and professional level of law enforcement within the State of California. Furthermore, California Attorney General KAMALA HARRIS has concurrent prosecutorial jurisdiction with the state's 58 District Attorneys, and she is bound by a duty to seek substantial justice and avoid the filing of criminal charges in which she knows (or should know) are not supported by probable cause.  HARRIS also has an independent duty to disclose information beneficial to the accused and by extension she has a duty to prevent wrongful arrests in the first place when she has the power to do so.

10.    Defendant CALIFORNIA DEPARTMENT OF JUSTICE is an agency of the State of California, headed by the Attorney General of the State, with a statutory duty to enforce, administer and interpret the law and promulgate regulations regarding weapons identified by the California Legislature as "Assault Weapons."  This agency also has the power to issue memorandums, bulletins and opinion letters to law enforcement agencies throughout the State regarding reasonable interpretations of what constitutes an "Assault Weapon" under California Law.

11.    Defendant CITY OF ROHNERT PARK a municipal subdivision of the State of California located in Sonoma County.  Defendant CITY OF ROHNERT PARK maintains a Department of Public Safety and is responsible for setting the policies and procedures of that Department, including but not limited to the training and discipline of peace officers employed by Defendant.

12.    Defendant OFFICER DEAN BECKER was a peace officer employed by the CITY OF ROHNERT PARK for all relevant time periods for this complaint.

13.    At this time, Plaintiffs are ignorant of the names any additional individual Defendants who participated in the arrests of Plaintiff BRENDAN RICHARDS.  Plaintiffs therefore name these individual officers as DOE Defendants and reserves the right to amend this complaint when their true

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

names are ascertained. Furthermore, if/when additional persons and entities are discovered to have assisted and/or lent support to the wrongful conduct of the Defendants named herein, Plaintiff reserves the right to amend this complaint to add those persons and/or entities as Defendants.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988.

15. This Court has supplemental jurisdiction over any state law causes of action arising from the same operative facts under 28 U.S.C. § 1367.

16. Venue for this action is proper under 28 U.S.C. §§ 1391 and/or the Civil Local Rules for bringing an action in this district.

## CONDITIONS PRECEDENT

17. All conditions precedent have been performed, and/or have occurred, and/or have been excused, and/or would be futile.

## FACTS - Plaintiff *HAYNIE*

18. On or about February 7, 2009, officers of the PLEASANTON POLICE DEPARTMENT arrested and detained MARK HAYNIE thus depriving him of his liberty.  The agency case numbers for the incident are: CEN: 09-6635 and PFN: BHD164.   The docket number for the Alameda Superior Court Case was: 09318856.

19. MARK HAYNIE was cited for possession of an Assault Weapon under California Penal Code § 12280 et seq.  Bail was set at $60,000.00.  This caused MARK HAYNIE to have to pay a $6,000 fee to a bail bondsman.

20. MARK HAYNIE's rifle was not an Assault Weapon because it was not listed in California Penal Code § 12276.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Amended Consolidated Complaint                    Page 6 of 28                    Haynie, et al.  v Harris

21.   MARK HAYNIE's rifle was not an Assault Weapons because it could not be identified under Penal Code § 12276.1 with the characteristics of an assault weapon in that:

    a.   It did not have a "detachable magazine" as that term is defined by California statutory law and regulations promulgated by the Defendant CALIFORNIA DEPARTMENT OF JUSTICE.

    b.   MARK HAYNIE's rifle did have a "bullet button" which requires the use of a tool (a bullet being defined as a tool by the California Code of Regulations) to remove the magazine from the gun, thus making the magazine non-detachable.

22.   MARK HAYNIE's rifle is based on the popular and common Colt AR-15 rifle. It is functionally identical to an AR-15 except that the magazine (as noted above) is non-detachable and the non-detachable magazine capacity does not exceed ten (10) rounds.

23.   Several manufacturers offer several models of semi-automatic, center-fire rifles that are not "assault weapons" as defined by California law.  Examples:

    a.   Ruger Mini-14 Ranch Rifle.  (Caliber 5.56mm NATO/.223 Rem.)

    b.   Ruger Mini Thirty Rifle.  (Caliber 7.62 x 39mm)Ruger 99/44 Deerfield Carbine. (Caliber .44 Remington Magnum)

    c.   Remington Model 750 Woodmaster. (Available in several calibers.)

    d.   Browning BAR.  (Available in several calibers.)

    e.   Benelli R1 Rifle. (Available in several calibers.)

24.   MARK HAYNIE made all required court appearances.  The Alameda County District Attorney's office declined to file an information against MARK HAYNIE and the matter was formally dropped from the Alameda County Superior Court Criminal Docket on March 27, 2009.

25.   MARK HAYNIE was deprived of his liberty until March 27, 2009 when bail was exonerated in Department 701 by Superior Court Judge Walker.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

26. MARK HAYNIE lost time off from work to make court appearances and incurred other losses associated with said criminal charges.

27. MARK HAYNIE was deprived of the possession and use of valuable personal property (a rifle) from the date of his arrest until mid-June of 2009 when he reacquired the firearm from the PLEASANTON POLICE DEPARTMENT.

28. On or about October 21, 2009, MARK HAYNIE obtained a finding of factual innocence under California Penal Code 851.8 from the PLEASANTON POLICE DEPARTMENT.

29. After termination of his criminal case and while this case was pending, MARK HAYNIE wrestled with whether or not he should "keep and bear" such a controversial weapon. He eventually sold his firearms for a number of reasons, including but not limited to a reasonable fear that he would face future additional arrests. This reasonable fear is based on:

    a. As part of MARK HAYNIE's enjoyment of his Second Amendment rights, he regularly goes to the range to shoot his rifles. These ranges are public places. Because the rifle he wants to reacquire looks like a contraband weapon, he draws attention to himself by possessing this legal version of the rifle in these public settings. This makes it more likely that HAYNIE will have future law enforcement contact and possible arrest, based on possession of this particular rifle.

    b. MARK HAYNIE's knowledge about the dangers of owning these weapons was gained from his own experiences as set forth in this law suit.

    c. MARK HAYNIE's knowledge about the risks of exercising his rights is also gained from Calguns.net, where he has learned about multiple wrongful arrests of law-abiding gun owners charged under California's vague and ambiguous Assault Weapon Statutes.

30. Based on his knowledge of these other cases – including co-plaintiff

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

RICHARDS – and his own personal experience, Plaintiff HAYNIE has a reasonable fear that he may suffer repeated wrongful arrests in the future if he reacquires a firearm that local law enforcement agencies continue to confuse with illegal Assault Weapons. This reasonable fear results in a chilling of his fundamental right to "keep and bear" arms of common use and ordinary design.

31. CALGUNS FOUNDATION, INC., paid for Plaintiff MARK HAYNIE'S representation in the criminal matter in the amount of: $3,713.43.

32. CALGUNS FOUNDATION, INC., has also paid for the defense of other California residents similarly situated. (e.g., charged with possession of Assault Weapons and dismissal of charges.)

33. On or about May 10, 2010, the Defendants CITY OF PLEASANTON and CITY OF PLEASANTON POLICE DEPARTMENT were dismissed from this case after payment to MARK HAYNIE of $6,000 and a release of all other claims.

34. Because Defendant CALIFORNIA DEPARTMENT OF JUSTICE has taken the position that HAYNIE's arrest was indeed wrongful (see Def's MTD Doc # 26-1, page 8, lines 2 – 12) and that there is nothing they can do to further clarify the detachable magazine feature and bullet-button technology, they (DOJ) have adopted an admission that the California Assault Weapon regulatory regime (statutes and regulations) cannot be improved upon by any means at their disposal to prevent future wrongful arrests.

35. Plaintiffs herein allege that if no further clarifications of California's Assault Weapons statutes and regulations are desirable or (legally?) possible, yet innocent gun-owners continue to be arrested by local law enforcement agencies and charged with violating Penal Code § 12280, then only one conclusion can follow – the entire set of laws defining California Assault Weapons is unconstitutionally vague and ambiguous.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

## FACTS – Plaintiff *RICHARDS* (First Arrest)

36. On or about May 20, 2010, Defendant BECKER arrested Plaintiff RICHARDS thus depriving him of his liberty.

37. On or about May 20, 2010, Defendant BECKER seized firearms (2 pistols and 1 rifle) from Plaintiff RICHARDS, thus depriving him of the means of exercising his Second Amendment rights.

38. The arresting agency case number for the incident is: 10-0001930.  The docket number for the Sonoma Superior Court Case was: SCR 583167.

39. Defendant BECKER investigated a disturbance at a Motel 6 located at 6145 Commerce Blvd., which was within his operational jurisdiction.

40. While both men were on the sidewalk at the motel, Defendant BECKER questioned Plaintiff RICHARDS about his involvement in the disturbance, and during the conversation, RICHARDS revealed that he had unloaded firearms in the trunk of his vehicle.

41. Defendant BECKER indicated that he planned to search the trunk of RICHARDS' vehicle and began to walk toward RICHARDS' car.  After BECKER asked a second time if Plaintiffs' firearms were loaded and responding "no", RICHARDS inquired whether OFFICER BECKER needed a warrant to search the trunk of his car.

42. Apparently relying on Penal Code § 12031(e), OFFICER BECKER replied that since RICHARDS had admitted that firearms were in the trunk, no warrant was necessary.

43. Only after this statement, and in obedience to BECKER'S demand, did RICHARDS turn over the keys to the trunk of his vehicle.

44. OFFICER BECKER found two pistols and one rifle, along with other firearm-related equipment in the trunk. None of the firearms were loaded.

45. OFFICER BECKER inquired about the registration of Plaintiff's firearms and RICHARDS replied that those firearms that required registration were

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    in fact registered to him.

2    46.   OFFICER BECKER placed RICHARDS under arrest for a violation of CA

3          Penal Code § 12280(b) – Possession of an unregistered Assault Weapon.

4    47.   On the strength of an incident report prepared by OFFICER BECKER, who

5          claimed to be a firearm instructor and an expert witness having previously

6          testified about the identification of Assault Weapons, Plaintiff RICHARDS

7          was charged by the Sonoma County District Attorney with the following

8          crimes by way of felony complaint:

9          a.    Two counts of possession of an Assault Weapon under California Penal

10               Code § 12280 et seq.

11         b.    Four counts of possession of large capacity magazines.

12   48.   Bail was set at $20,000.00.  RICHARDS spent 6 days in jail while his family

13         tried to raise the funds for bail. Finally, a $1,400 non-refundable fee was paid

14         to a bondsman and RICHARDS was released on bail.

15   49.   On September 9, 2010, prior to a scheduled Preliminary Hearing, the Sonoma

16         County District Attorney's Office dismissed all charges against Plaintiff

17         BRENDAN RICHARDS.

18   50.   The dismissal was based on an August 16, 2010, report prepared by Senior

19         Criminalist John Yount of the California Department of Justice Bureau of

20         Forensic Services.  Criminalist Yount had found that none of RICHARDS

21         firearms were Assault Weapons as defined by the California Penal Code or

22         any of its regulations.

23         a.    One firearm (a semi-automatic pistol) had a properly installed bullet

24               button, thus rendering the firearm incapable of accepting a detachable

25               magazine that could only be removed from the gun by the use of a tool.

26         b.    The other firearm (a semi-automatic rifle) had none of the features or

27               characteristics that make a firearm subject to registration under CA's

28               Assault Weapon regime.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Amended Consolidated Complaint          Page 11 of 28          Haynie, et al.  v Harris

c.   There was never an issue with the third firearm (another semi-automatic pistol that is actually on the California safe handgun list) being classified as an assault weapon and it was registered to Plaintiff.

51.   All of RICHARDS' firearms were semi-automatic guns. California certifies scores of semi-automatic pistols (including models based on the venerable .45 Cal. M1911 of World War II vintage) for retail sale in California. Additionally, several manufacturers offer several models of semi-automatic, center-fire rifles that are not "assault weapons" under California law. Examples include:

a.   Ruger Mini-14 Ranch Rifle. (Caliber 5.56mm NATO/.223 Rem.)

b.   Ruger Mini Thirty Rifle. (Caliber 7.62 x 39mm)Ruger 99/44 Deerfield Carbine. (Caliber .44 Remington Magnum)

c.   Remington Model 750 Woodmaster. (Available in several calibers.)

d.   Browning BAR. (Available in several calibers.)

e.   Benelli R1 Rifle. (Available in several calibers.)

f.   Springfield Armory M1A with California legal muzzle break and 10-round magazines.

g.   World War II Era M1 Garand, available for mail order sales from the United States Government through the Civilian Marksmanship program. http://www.thecmp.org/Sales/rifles.htm

h.   World War II Era M1 Carbines, also available for mail order sales from the United States Government through the Civilian Marksmanship program. http://www.thecmp.org/Sales/rifles.htm

Thus, Plaintiffs herein aver that semi-automatic firearms are common and ordinary weapons, suitable for exercising Second Amendment rights.

52.   After the government's release of the expert's report, the Prosecution had further discussions with RICHARDS' Counsel, wherein it was pointed out that California law does not criminalize mere possession of large capacity

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Amended Consolidated Complaint          Page 12 of 28          Haynie, et al. v Harris

1    magazines.  Upon The People's concession that this is the state of the law in

2    California, all charges against RICHARDS were dismissed.

3    53.   RICHARDS, through counsel, made several inquiries over the next several

4          months to the Sonoma County District Attorney about a stipulation of factual

5          innocence under Penal Code § 851.8.   These negotiations reached an impasse

6          when the District Attorney insisted on a finding that there was probable

7          cause for the police to arrest RICHARDS as a *quid pro quo* for their

8          stipulation for a finding of factual innocense.  In other words, it can be

9          inferred that the Sonoma County District Attorney still believed, after

10         dismissing the case against RICHARDS, that there is enough ambiguity in

11         the California Assault Weapon statutes and regulations that reasonable

12         minds can differ and that experts are required to interpret the law.  Of course

13         this set of circumstances will still result in gun-owners continuing to be

14         arrested, having to post bail, and having to hire attorneys and experts to

15         clear their names.

16   54.   BRENDAN RICHARDS made all required court appearances until the

17         matter was dismissed on September 9, 2010.

18   55.   BRENDAN RICHARD was thus deprived of his liberty while he was

19         incarcerated pending the posting of bail and then through to September 9,

20         2010, when the case was dismissed and bail was exonerated.

21   56.   BRENDAN RICHARDS lost time off from work and incurred travel expenses

22         to make court appearances. He also incurred other losses associated with the

23         criminal case against him.

24   57.   BRENDAN RICHARDS was deprived of the possession and use of valuable

25         personal property (two pistols and a rifle), necessary for exercising his Second

26         Amendment "right to keep and bear arms." This deprivation of

27         constitutionally protected property occurred from the date of his arrest until

28         the property was returned to him following the dismissal.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

58. THE CALGUNS FOUNDATION, INC., paid $11,224.86 for Plaintiff BRENDAN RICHARDS' legal representation in the first criminal matter.

59. THE CALGUNS FOUNDATION, INC., has also paid for the defense and expert consultations for many other California residents similarly situated. (e.g., possession of a "bullet button" semi-automatic rifle, arrest and dismissal of charges.)

## FACTS – Plaintiff *RICHARDS* (Second Arrest)

60. On or about August 14, 2011, the Sonoma County Sheriff's Office acting through Sheriff's Deputy Greg Myers, arrested Plaintiff RICHARDS thus depriving him of his liberty.

61. On or about August 14, 2011, the Sonoma County Sheriff's Office acting through Sheriff's Deputy Greg Myers, made contact with RICHARDS, wherein RICHARDS informed the arresting officer that there were firearms located in the trunk of his vehicle. RICHARDS declined to consent to a search of the trunk. The arresting officer then hand-cuffed RICHARDS and proceeded to conduct a warrantless search of the vehicle in apparent reliance on Penal Code § 12031(e). The arresting officer seized a Springfield Armory M1A from the trunk of Plaintiff RICHARDS car.

62. The arresting officer apparently believed that the muzzle break installed on RICHARDS' rifle was a flash suppressor. RICHARDS was charged with a single felony count of violating California Penal Code § 12280(b) – possession of an assault weapon. Bail for RICHARDS was initially set at $100,000.

63. A motion to reduce bail was made on or about August 18, 2011, and bail was reduced to $20,000. RICHARDS was released on bail that day after posting a non-refundable fee to a bail bondman of approximately $2,000.

64. Prior to the next court appearance, the weapon in question was examined by the California Department of Justice Bureau of Forensic Services. Senior

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Criminalist John Yount issued a report on or about August 29, 2011, that the firearm was not an Assault Weapon under California law.

65. The arresting officer either lacked the training to properly distinguish a muzzle break from a flash suppressor and/or the definition of a flash suppressor is so vague and ambiguous that a well trained peace officer can easily confuse a flash suppressor with a muzzle break.

66. The California Department of Justice has never promulgated objective standards for identifying flash suppressors. Plaintiffs allege on information and belief that the CALIFORNIA DEPARTMENT OF JUSTICE in fact relies upon manufacturer catalogs and marketing materials, rather than objective scientific tests to determine whether a device is a flash suppressor, flash-hider, muzzle break and/or recoil compensator.

67. On or about September 19, 2011, the charges against RICHARDS were dismissed. Although he was cleared by the government's own expert, the Sonoma County D.A. declined to stipulate to a finding of factual innocence.

68. The weapon in question – Springfield Armory model M1A is a common and ordinary firearm suitable for exercising the "right to keep and bear arms" under the Second Amendment to the United States Constitution.

69. RICHARDS lost time off of work. He was required to post bail. CALGUNS FOUNDATION, INC., again paid RICHARDS' criminal defense lawyer.

70. Following this second arrest on charges of violating California Penal Code § 12280(b) – possession of an Assault Weapon – Plaintiff RICHARDS has a reasonable fear, that by exercising a fundamental right protected by the U.S. Constitution, he is realistically threatened by a repetition of wrongful arrests. He further contends that the claim of future injury cannot be written off as mere speculation. RICHARDS also bases his fear of repeated arrests on the information he obtains from the Calguns.net website.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

## FACTS – Relating to Vague and Ambiguous Laws Impacting the Second Amendment

71. The CALIFORNIA DEPARTMENT OF JUSTICE is the State agency responsible for the training and education of law enforcement agencies with respect to Assault Weapons under Penal Code §§ 12276.5 and 12289.

    a. Penal Code § 12276.5(c) states: "The Attorney General **shall** adopt those rules and regulations that **may** be necessary **or** proper to carry out the purposes and intent of this chapter." [emphasis added]

    b. Penal Code § 12289(a) states [in part]: "The Department of Justice **shall** conduct a public education and notification program regarding the registration of assault weapons and the definition of the weapons set forth in Section 12276.1." [emphasis added]

72. California's definitions of Assault Weapons are set forth at Penal Code §§ 12276 and 12276.1.

73. The California Code of Regulations interpreting the statutory definition of assault weapons are found at Title 11, Division 5, Chapters 39 & 40.

74. The Orange County Sheriff's Department has issued a training bulletin about the "bullet button" to prevent wrongful arrests in that county. A true and correct copy is attached as **Exhibit A**.

75. The City of Sacramento has issued a training bulletin about the "bullet button" to prevent wrongful arrests in that jurisdiction. A true and correct copy is attached as **Exhibit B.**

76. The Calguns Foundation Inc., has published a flow-chart to identify weapons that are designated as assault weapons under California law. A true and correct copy is attached as **Exhibit C**.

77. Defendant CALIFORNIA DEPARTMENT OF JUSTICE has promulgated an "Assault Weapons Identification Guide," an 84-page publication which describes the Assault Weapons regulated in Penal Code sections 12276,

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

12276.1, and 12276.5.  In the Guide, the Department acknowledges that a magazine is considered detachable when it "can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required.  A bullet or ammunition cartridge is considered a tool."

78.   Defendant CALIFORNIA DEPARTMENT OF JUSTICE has declined to issue a statewide bulletin or other directive regarding the "bullet button."

79.   Though it would not be unduly burdensome for Defendant CALIFORNIA DEPARTMENT OF JUSTICE to issue a bulletin regarding the technology of the bullet button and to develop a field test to insure state-wide compliance with the law, the CALIFORNIA DEPARTMENT OF JUSTICE insists:

a.   That this Court does not have the power to compel issuance of such a bulletin, and/or

b.   That the California Assault Weapon Statutes and Regulations are sufficiently clear that the risk of arrest and prosecution should be borne by the citizens of California and/or that the risks of paying damages for false arrest should be borne by local law enforcement agencies.

At this stage of the litigation, Plaintiffs are prepared to accept Defendants' (DOJ) characterization that the Assault Weapon Statutes and Regulations that they are charged with interpreting, educating the public about and enforcing are not subject to any further clarification by their agency.[4]

80.   Instead, Plaintiffs will aver that the entire California Assault Weapon Statutes and the Regulations derived therefrom are vague and ambiguous on their face and as applied to HAYNIE and RICHARDS.

81.   Furthermore, Plaintiffs allege that Defendant CALIFORNIA DEPARTMENT OF JUSTICE has contributed – through its policies, procedures and customs

---

[4] This Amended Complaint omits any request for prospective injunctive relief to force DOJ to issue any clarifying bulletins.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

– to a state of general confusion of California's Assault Weapons laws thus rendering them hopelessly vague and ambiguous as applied; and thus an infringement of the Second Amendment to the United States Constitution.

## FACTS – *Department of Justice* Creates Confusion

82.   The formation of CGF was partially inspired by a desire to counteract a disinformation campaign orchestrated by the California Department of Justice (DOJ) in response to gun owners realizing the implications of the California Supreme Court Decision in *Harrot v. County of Kings* and the expiration of the Federal Assault Weapons laws.

83.   In late 2005, various individuals and licensed gun stores began importing into California AR pattern rifles and the receivers for them.

84.   In response to inquiries about the legality of importing and possessing certain AR and AK pattern rifles and receivers, DOJ began replying in their official letters that while THEY were of the opinion that these rifles were legal, local District Attorneys might disagree and prosecute anyway. True and correct copies of these letter are attached as **Exhibit D** and they all follow a similar pattern of declaring a certain gun part (receiver) legal to import into California and then warning the recipient that California's 58 District Attorneys may have a different opinion that could result in prosecution.  See:

i.   December 12, 2005 letter from DOJ to Ms. Amanda Star rendering an opinion about the legality of a Stag-15 Lower receiver but warning that local prosecutors may disagree and prosecute accordingly.

ii.   January 18, 2006 letter from DOJ to BST Guns also opining out the legality of firearms, but giving the same warning the 58 county prosecutors could potentially prosecute anyway.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

| | |
|---|---|
| 1 | iii.    December 28, 2005 letter from DOJ to Matthew Masuda. |
| 2 | iv.    December 27, 2005 letter from DOJ to Christopher Kjellberg. |
| 3 | v.    December 27, 2005 letter from DOJ to Kirk Haley. |
| 4 | vi.    December 28, 2005 letter from DOJ to Mark Mitzel. |
| 5 | vii.    December 28, 2005 letter from DOJ to Jason Paige. |

85. From February to May 2006, the California Department of Justice issued a series of memorandums that were obtained as part of a California Public Records Request.  A true and correct copy of that disclosure is Attached as **Exhibit E**.  The memorandums are remarkable because:

    a.    The Department of Justice made changes to the various versions of this memorandum due to Jason Davis, then an attorney for the National Rifle Association, pointing out legal flaws in the various iterations.

    b.    In all versions of the memorandum, the Department of Justice directly conflicted the previously published Assault Weapons Information Guide by stating that owners of a firearm with features had to, "permanently alter the firearm so that it cannot accept a detachable magazine." "Permanent alteration" is not required in the Penal Code, the Assault Weapons Information Guide, or the then existing California Code of Regulations 11 C.C.R. 5469.

86. On or about May 10, 2006, DOJ counsel Alison Merrilees informed a member of the public that the DOJ wished to create a test case, "[w]e are eagerly awaiting a test case on this, because we think we'll win." A true and correct copy of the email that was obtained as part of a Public Records Act request is attached as **Exhibit F**.

87. In May 2006, DOJ issued an internal memo to phone staff  that stated, "It is DOJ's opinion that under current law, a semiautomatic centerfire rifle that is modified to be temporarily incapable of accepting a detachable magazine, but

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    can be restored to accommodate a detachable magazines, is an assault

2    weapons if it has any of the features listed in §12276.1(a)(1)," and

3    "Individuals who alter a firearm designed and intended to accept a

4    detachable magazine in an attempt to make it incapable of accepting a

5    detachable magazine do so at their legal peril," stating further, "[w]hether or

6    not such a firearm remains capable of accepting a detachable magazine is a

7    question for law enforcement agencies, district attorneys, and ultimately

8    juries of twelve persons, not the California Department of Justice."  A copy of

9    this memorandum was obtained as part of a Public Records Act Request and

10   is attached as **Exhibit G**.

11   88.  On or about June 6, 2006, DOJ issued a Notice of Proposed Rulemaking. The

12        proposed amendment would have "define[d] a sixth term, "capacity to accept

13        a detachable magazine", as meaning "capable of accommodating a detachable

14        magazine, but shall not be construed to include a firearm that has been

15        permanently altered so that it cannot accommodate a detachable magazine."

16        A true and correct copy of the notice is attached as **Exhibit H**.

17   89.  On or about November 1, 2006, DOJ issued a "Text of Modified Regulations"

18        The updated text attempted to define "detachable magazine" as "currently

19        able to receive a detachable magazine or readily modifiable to receive a

20        detachable magazine" and had other "permanency" requirements.  A true and

21        correct copy of the notice is attached as **Exhibit I**.

22   90.  Plaintiff CGF alleges on information and belief, DOJ did not submit the

23        Modified Regulations to the Office of Administrative Law ("OAL") and thus

24        the 2006 Rulemaking did not take effect.

25   91.  On or about July 11, 2007, CGF (through Gene Hoffman, the Chairman of

26        CGF) petitioned the OAL to have them find that the continued publication of

27        the "Important Notice" Memorandum after the 2006 Rulemaking that was

28        not submitted to OAL was an "Underground Regulation."  See **Exhibit J**.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Amended Consolidated Complaint                Page 20 of 28                Haynie, et al.  v Harris

92. On or about September 11, 2007, OAL accepted Hoffman's petition.  See **Exhibit K**.

93. On or about September 21, 2007, OAL suspended it's review as DOJ issued a certification on or about September 20, 2007, that stated, "[DOJ] reserves the right to interpret the law in any case-specific adjudication, as authorized in *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557,572."  A true and correct copy of the letter from the OAL along with DOJ's certification is attached as **Exhibit L**.

94. The reservation in the certification of September 20, 2007, leads to uncertainty over whether the DOJ would take the position that permanence was required for modifications to a firearm so that the firearm would not have "the capacity to accept a detachable magazine."

95. On or about September 29, 2008, DOJ responded to a letter inquiry about the legality of selling a semiautomatic center fire rifle with an alternate version of the bullet button colloquially known as the Prince-50 kit. DOJ stated:

> "Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a fixed, removeable magazine can also be considered to have the 'capacity to accept a detachable magazine,' we are unable to declare rifles configured with the 'Prince 50 Kit' or 'bullet button' to be legal or illegal."

See **Exhibit M**, with special attention to Attachment A, which is the letter dated September 29, 2008.

96. On or about November 3, 2008, DOJ replied to Kern County DA Edward Jagels:

> "Since there are no statutes, case law, or regulations concerning whether a rifle that is loaded with a fixed, removeable magazine can also be considered to have the 'capacity to accept a detachable magazine,' we are unable to declare rifles configured with the 'Prince 50 Kit' or 'bullet button' to be legal or illegal."

A true and correct copy of this letter is attached as **Exhibit N**.  The letter is

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    hard to read due to multiple copies.  If discovery proceeds in this matter,

2    Plaintiff  would expect to obtain a cleaner copy.

3    97.   Not only is the CALIFORNIA DEPARTMENT OF JUSTICE claiming it has

4    no duty to issue a clarifying bulletin to the State's District Attorneys and

5    Law Enforcement Community, on this issue; they have apparently engaged

6    in a pattern of disinformation and confusion on the issue of whether a rifle

7    fitted with a device that makes it incapable of accepting a detachable

8    magazine is legal to own in California.  It could be argued that CALIFORNIA

9    DEPARTMENT OF JUSTICE 's firearms division has created such a state of

10   confusion that the entire statutory and regulatory scheme for defining

11   California Assault Weapons is hopelessly, and unconstitutionally vague and

12   ambiguous.

13

14   **FACTS – Calguns Foundation, Inc., Ongoing Efforts to
     Assist Law Abiding Gun Owners**

15

16   98.   The CALGUNS FOUNDATION, INC., has defended many incidents of law

17   abiding gun owners and retailers whose firearms were either seized, the

18   individual was arrested and/or charged with violating Assault Weapons

19   Control Act.

20      a.    In approximately April 2007, Matthew Corwin was arrested and

21            charged with multiple violations of the AWCA. See *People v. Matthew

22            Corwin*, Case No. GA069547, Los Angeles Superior Court.

23      b.    In June 2008, John Contos was arrested and charged in Solano County

24            with a violation of Penal Code § 12280 - possession/manufacturing of

25            Assault Weapons based on the allegation that his rifle had an illegal

26            thumb-hole stock.  The case number was VCR198514-VF.  CGF funded

27            the defense of Mr. Contos.  The case was dismissed and the D.A.

28            stipulated to a finding of factual innocence.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

c.   In November 2008, John Crivello had a semiautomatic centerfire rifle with a bullet button magazine release seized from his home in Santa Cruz, California by the Santa Cruz Police Department. Counsel provided by CGF educated the Santa Cruz District Attorney's office. Counsel to CGF was advised that DOJ stated that it was unclear whether the bullet button was legal but that the District Attorney should file anyway. The District Attorney (ADA Dave Genochio and/or Charlie Baum) dropped charges and the firearm was returned to Mr. Crivello. CGF spent $645.00 defending Mr. Crivello.

d.   On or about November 3, 2009, Deputy J. Finley of Orange County Sheriff's Department seized a bullet button equipped Stag Arms AR-15 style firearm from Stan Sanders. CGF counsel was engaged to explain the legality of the firearm to the Orange County Sheriff's Department and the firearm was subsequently returned to Mr. Sanders. The Orange County Training Bulletin was issued partially in response to this incident. CGF spent $650.00 defending Mr. Sanders.

e.   On or about March 30, 2010, Robert Wolf was arrested by the Riverside County Sheriff's Department for possession of a semiautomatic centerfire rifle with a "Prince 50 Kit." CGF counsel intervened and had the case dismissed on or about November 11, 2010, with the firearm subsequently returned to Mr. Wolf. CGF spent $5,975.00 defending Mr. Wolf.

f.   Confusion about the legality of semiautomatic center-fire rifles with a bullet buttons continues. On or about March 29, 2011, the Cotati Police Department seized a semiautomatic center-fire rifle with a bullet button from Max Horowitz. CGF counsel has been retained to defend Mr. Horowitz who was arraigned on August 8, 2011, in Sonoma County.  The case is still pending.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

99.    Plaintiffs allege on information and belief that there may be other innocent gun owners, who without the resources of THE CALGUNS FOUNDATION, INC., and/or THE SECOND AMENDMENT FOUNDATION, were charged under these vague and ambiguous statutes/regulations and plead guilty (or no contest) to lesser charges to avoid a felony conviction.

### FACTS – Semi-Automatic, Center-Fire Rifles and Handguns are "Arms" Protected by the Second Amendment.

100.    Plaintiffs herein allege that semi-automatic center-fire rifles and handguns with detachable magazines and any number of additional features (e.g., pistol gripes, collapsible stocks, flash suppressors, etc...) are "arms" protected by the Second Amendment to the United States Constitution. Furthermore, to the extent that California seeks to regulate the manufacturing, acquisition and possession of semi-automatic, center-fire rifles with detachable magazines, it must define them in a way that is not vague and ambiguous.

101.    Even assuming *arguendo* that Plaintiffs are wrong and some semi-automatic, center-fire rifles and handguns with detachable magazines are not protected by the Second Amendment – California's Assault Weapon laws are still unconstitutional because innocent gun owners continue to be arrested for mere possession of the sub-class of these weapons that are legal and therefore absolutely protected by the Second Amendment.

102.    Plaintiff herein allege that the state of confusion caused by the current vague and ambiguous statues/regulations continues to result in the wrongful arrests of innocent gun-owners while they are exercising a fundamental "right to keep and bear" lawful firearms. These wrongful arrests and the chilling of fundamental rights violates the Second Amendment to the United States Constitution as that right is incorporated against state action through the Fourteenth Amendment.

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**FIRST CLAIM FOR RELIEF:**
**SECOND AMENDMENT, UNITED STATES CONSTITUTION**
**42 USC § 1983, 1988 - INJUNCTIVE/DECLARATORY RELIEF**
**ALL PLAINTIFFS vs DEFENDANTS: HARRIS AND**
**CALIFORNIA DEPT OF JUSTICE**

103.   Paragraphs 1 through 102 are incorporated by reference as though fully set forth.

104.   California's Assault Weapon Statutes and Regulations are unconstitutionally vague and ambiguous have resulted in the wrongful arrest, detention and prosecution of law-abiding citizens exercising their Second Amendment right to 'keep and bear arms' that are in common use for lawful purposes.

105.   California's Assault Weapon Statutes and Regulations are unconstitutionally vague and result in the wrongful confiscation of common and ordinary firearms, that are protected by the Second Amendment, from their law-abiding owners.

**SECOND CLAIM FOR RELIEF:**
**FOURTH AMENDMENT, UNITED STATES CONSTITUTION**
**42 USC § 1983, 1988 - INJUNCTIVE/DECLARATORY RELIEF**
**RICHARDS vs DEFENDANTS: HARRIS AND**
**CALIFORNIA DEPT OF JUSTICE**

106.   Paragraphs 1 through 102 are incorporated by reference as though fully set forth.

107.   California Penal Code § 12031(e) is unconstitutional on its face, and as applied in this case.  Mere possession of a firearm, (i.e., exercising a fundamental right) when otherwise lawful, cannot support a finding of probable cause to believe a crime has been committed, such that the Fourth Amendment's warrant requirement can be legislatively disregarded.

108.   Plaintiff BRENDAN RICHARDS requests declaratory and/or prospective injunctive relief under 42 U.S.C. § 1983 that Penal Code § 12031(e) – on its face and as applied – is a violation of his constitutional right to be free from

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1    unreasonable seizure under the Fourth Amendment to the United States

2    Constitution, while he is exercising his Second Amendment rights to "keep

3    and bear" lawful firearms.

4    109.    Plaintiffs THE CALGUNS FOUNDATION, INC., and THE SECOND

5    AMENDMENT FOUNDATION, INC., also requests declaratory and/or

6    prospective injunctive relief under 42 U.S.C. § 1983 that Penal Code §

7    12031(e) is unconstitutional on its face. It is tantamount to a legislatively

8    issued general warrant applicable only against gun owners transporting

9    firearm on public roads and highways.  General warrants were a particular

10   evil that the Fourth Amendment was adopted to prevent.

11

12                    **THIRD CLAIM FOR RELIEF:**
         **FOURTH AMENDMENT | UNITED STATES CONSTITUTION**
13          **42 USC § 1983, 1988 - INJUNCTIVE RELIEF**
         **RICHARDS vs DEFENDANTS: CITY OF ROHNERT PARK**
14                    **AND OFFICER BECKER**

15   110.    Paragraphs 1 through 102 are incorporated by reference as though fully set

16   forth.

17   111.    Plaintiffs BRENDAN RICHARDS, THE CALGUNS FOUNDATION, INC.,

18   and THE SECOND AMENDMENT FOUNDATION, INC., seek injunctive

19   relief against the Defendants CITY OF ROHNERT PARK and OFFICER

20   BECKER that will require amendments to their policies and training to

21   address:

22   a.    Identification of Assault Weapons under California law.

23   b.    Compliance with the Fourth Amendments.

24   112.    Said injunctive relief will insure uniform and just application the Fourth

25   Amendment and of California's Weapons Control Laws.  Uniform and just

26   enforcement of these laws are important because these laws effect the

27   fundamental Second Amendment right of every law abiding citizen to keep

28   and bear arms that are in common use for lawful purposes.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

**FOURTH CLAIM FOR RELIEF:**
**FOURTH AMENDMENT | UNITED STATES CONSTITUTION**
**42 USC § 1983, 1988 - DAMAGES**
**RICHARDS vs DEFENDANTS: CITY OF ROHNERT PARK**
**AND OFFICER BECKER**

113.   Paragraphs 1 through 102 are incorporated by reference as though fully set forth.

114.   Plaintiffs BRENDAN RICHARDS and THE CALGUNS FOUNDATION, INC., seek damages against the Defendants CITY OF ROHNERT PARK and OFFICER BECKER in an amount according to proof for losses incurred as a result of the warrantless search of RICHARDS' vehicle, his arrest and the subsequent illegal seizure of his person and of the valuable property (firearms); and for expenditures (fees/costs) associated with the defense of the criminal charges.

WHEREFORE, the Plaintiffs requests that this Court:

A.   Issue a declaratory judgment and/or injunctive relief that California's Assault Weapon Statutes and Regulations are unconstitutional.

B.   Issue a declaratory judgment and/or injunctive relief that California Penal Code § 12031(e) is unconstitutional.

C.   Injunctive relief against CITY OF ROHNERT PARK and OFFICER BECKER to prevent future violations of the Fourth Amendment.

D.   Damages from CITY OF ROHNERT PARK and OFFICER BECKER in an amount according to proof.

E.   Award costs of this action to all the Plaintiffs.

F.   Award reasonable attorney fees and costs to the Plaintiffs on all Claims of the complaint, including but not limited to fee/cost awards under 42 USC § 1983, 1988 and California Code of Civil Procedure § 1021.5.

G.   Such other and further relief as this Court may deem appropriate.

Donald Kilmer
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

1

2   Respectfully Submitted.

3   Dated: November 4, 2011,

4

5   _____/s/_____                          _____/s/_____
    Donald Kilmer, Jr. [SBN: 179986]         Jason A. Davis [SBN: 224250]
6   Law Offices of Donald Kilmer, APC        Davis & Associates
    1645 Willow Street, Suite 150            27281 Las Ramblas, Suite 200
7   San Jose, California 95125               Mission Viejo, CA 92691
    Voice: (408) 264-8489                    Voice: (949) 310-0817
8   Fax:   (408) 264-8487                    Fax:   (949) 288-6894
    E-Mail: Don@DKLawOffice.com              E-Mail: Jason@CalGunLawyers.com

9

10  Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Donald Kilmer**
Attorney at Law
1645 Willow St.
Suite 150
San Jose, CA 95125
Vc: 408/264-8489
Fx: 408/264-8487

Amended Consolidated Complaint          Page 28 of 28          Haynie, et al.  v Harris