1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   MARK AARON HAYNIE, BRENDAN JOHN          No. C 10-01255 SI
     RICHARDS, THE CALGUNS FOUNDATION,
11   INC., and THE SECOND AMENDMENT          **ORDER GRANTING DEFENDANTS'**
     FOUNDATION, INC.,                       **MOTION TO DISMISS WITHOUT**
                                             **LEAVE TO AMEND**
12                    Plaintiffs,

13        v.

14   KAMALA HARRIS, ATTORNEY GENERAL
     OF CALIFORNIA and CALIFORNIA
15   DEPARTMENT OF JUSTICE,

16                    Defendants.
                                                    /
17

18

19

20        On February 28, 2014, the Court heard argument on defendants' motion to dismiss plaintiffs'

21   third amended consolidated complaint.  Having considered the arguments of the parties and the papers

22   submitted, and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss,

23   without leave to amend.

24

25                                    **BACKGROUND**

26        Plaintiffs Mark Aaron Haynie ("Haynie") and Brendan John Richards ("Richards") filed separate

27   lawsuits against California Attorney General Kamala Harris ("Harris") and the California Department

28   of Justice ("DOJ"), alleging that they were wrongfully arrested for lawful possession of certain weapons

     that officers mistakenly believed were assault weapons banned under the California Assault Weapons

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

Control Act ("AWCA"), California Penal Code sections 12275-12290. The Calguns Foundation and the Second Amendment Foundation are also plaintiffs in both suits. The Calguns Foundation is a "non-profit organization" which "support[s] the California firearms community by promoting education . . . about California and federal firearms laws, rights and privileges, and defend[s] and protect[s] the civil rights of California gun owners." Third Amended Consolidated Complaint ("ACC") ¶ 12. The purposes of the Second Amendment Foundation, a "non-profit membership organization," include "education, research, publishing and legal action focusing on the Constitutional right to privately own[] and possess firearms, and the consequences of gun control." *Id.* ¶ 13. The Calguns Foundation contributed funds for Haynie's and Richards' legal representation during their criminal proceedings. *Id.* ¶¶ 35, 63, 74.

The following facts are drawn from the operative complaint.

**1.  Haynie**

On February 7, 2009, Haynie was arrested by officers of the Pleasanton Police Department for possession of an assault weapon banned under the AWCA. ACC ¶¶ 22-23. Haynie paid $6,000 to a bail bondsman. *Id.* ¶ 23. Haynie's rifle was "based on the popular and common Colt AR-15 rifle," and was "functionally identical to an AR-15." *Id.* ¶ 26. However, Haynie's rifle contained a "bullet button" which makes the magazine of the rifle non-detachable, taking the weapon out of the statutory definition of an assault weapon under California Penal Code sections 12276 and 12276.1. *Id.* ¶¶ 24-25. The Alameda County District Attorney's Office declined to file an information against Haynie, and the matter was dropped on March 27, 2009. *Id.* ¶ 28. Haynie was released on that same date. *Id.* ¶ 29. On October 21, 2009, Haynie obtained a finding of factual innocence from the Pleasanton Police Department. *Id.* ¶ 32. The Calguns Foundation paid for Haynie's legal representation. *Id.* ¶ 35. Haynie has since sold his firearms for fear that he would face additional future arrests. *Id.* ¶ 33. He alleges that he has a reasonable fear of reacquiring the rifle because it "looks like a contraband weapon," making it more likely that he will have future law enforcement contact and possible arrest. *Id.*

Haynie originally brought suit against the City of Pleasanton and the City of Pleasanton Police Department, but the City and police department were dismissed from the case after paying Haynie

$6,000 in exchange for a release of all other claims. *Id.* ¶ 37. Haynie alleges that the DOJ is the state agency responsible for the training and education of law enforcement agencies with respect to assault weapons, and that, because the DOJ will not take measures to clarify the detachable magazine feature or bullet-button technology, "innocent gun-owners continue to be arrested by local law enforcement agencies and charged with violating Penal Code section 30600 *et seq.*" *Id.* ¶¶ 38-39. Haynie alleges that the "the entire set of laws and regulations defining California assault weapons are unconstitutionally vague and ambiguous." *Id.* ¶ 39.

## 2. Richards

Plaintiff Richards was arrested on two separate occasions for the possession of what officers believed were assault weapons banned under California law. *Id.* ¶¶ 40, 50, 65, 67. The first arrest occurred in May of 2010, when a Rohnert Park police officer believed Richards possessed assault weapons within the scope of the AWCA. *Id.* ¶¶ 40, 50-51. Officer Becker, the arresting officer, also seized two pistols and one rifle from Richards on that day. *Id.* ¶ 61. Richards spent six days in jail and was released after paying a $1,400 fee to a bondsman. *Id.* ¶ 52. On September 9, 2010, the Sonoma County District Attorney's Office dismissed all charges against Richards based on a report by a criminalist from the California Department of Justice. *Id.* ¶¶ 53-54. The report opined that Richards' firearms lacked features that would make them illegal under the AWCA. *Id.* ¶ 54. One of the firearms deemed to not be an assault weapon under the Penal Code "had a properly installed bullet button, thus rendering the firearm incapable of accepting a detachable magazine that could only be removed from the gun by the use of a tool." *Id.* ¶ 54(a). Thereafter, all charges against Richards were dismissed and his firearms were returned to him. *Id.* ¶¶ 56, 61.

In August of 2011, Richards was arrested a second time, when a Sonoma County Sheriff's deputy found a Springfield Armory M1A rifle in the trunk of Richards' car. *Id.* ¶¶ 65-66. The arresting officer believed that the rifle was illegal under the AWCA because it had a "flash suppressor" on it. *Id.* ¶ 67. Richards was released after paying $2,000 to a bail bondsman. *Id.* ¶ 68. On September 19, 2011, the charges against Richards were dismissed due to a report by a California Department of Justice criminalist stating that Richards' firearm did not have a flash suppressor and was thus not illegal under

the AWCA. *Id.* ¶ 69.  All charges against Richards were subsequently dismissed. *Id.* ¶ 72.  Richards alleges that because he was arrested twice, he has a reasonable fear that he will face repeated wrongful arrests in the future. *Id.* ¶ 75.

### 3.     Procedural History

On May 6, 2011, defendants filed a motion to dismiss Haynie's first amended complaint ("FAC").  Docket No. 26.  On June 20, 2011, plaintiffs and defendants filed a stipulation and proposed order consolidating *Haynie v. Harris* and *Richards v. Harris* because "[b]oth Haynie and Richards present the same legal issues regarding California's Assault Weapons Control Act and the Department of Justice's role in enforcing it."  Docket No. 38.  Accordingly, on June 21, 2011, the Court ordered the cases to be consolidated for hearing pursuant to Federal Rule of Civil Procedure 42(a).  On October 22, 2011, the Court granted defendants' motion to dismiss but allowed plaintiffs the opportunity to cure the deficiencies by filing an amended consolidated complaint.

On November 4, 2011, plaintiffs filed an amended consolidated complaint.  Docket No. 43.  Richards then brought a related action based on his second arrest, and on December 21, 2011, *Richards v. Harris (II)* was ordered to be related with *Haynie v. Harris* and *Richards v. Harris*.  Docket No. 47.  On November 1, 2012, plaintiffs filed a second amended consolidated complaint.  Docket No. 71.  Following a case management conference, the parties agreed to voluntarily dismiss from the lawsuit the City of Rohnert Park and Officer Becker.

On December 20, 2013, plaintiffs filed the operative complaint.  Plaintiffs claim that defendants "intentionally or through deliberate indifference to the rights of law-abiding gun-owners," have failed to generate appropriate memoranda to assist local law enforcement agencies in properly identifying "assault weapons" under the AWCA.  ACC ¶¶ 16-17, 84.  Specifically, plaintiffs maintain that because the DOJ will not issue a bulletin or memorandum clarifying that weapons with a "bullet button" are legal to possess, they fear similar wrongful arrests in the future. *Id.*  Plaintiffs also argue that the AWCA is unconstitutionally vague and ambiguous on its face and as applied to Haynie and Richards. *Id.* at 86.  By the present motion, defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6) to dismiss the ACC.  Docket No. 92, Defendants' Motion to Dismiss the Third Amended Complaint ("Defs.' Mot.").

**LEGAL STANDARD**

**1.      Federal Rule of Civil Procedure 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint.  The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted).  "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation omitted).  A complaint will be dismissed if, looking at the complaint as a whole, it appears lacking in federal jurisdiction either "facially" or "factually."  *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff.  *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Mortensen v. First Fed. Savings & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).

**2.      Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).  Dismissal of a complaint may be based "on the lack

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

2    *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In answering this question, the

3    Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in

4    the plaintiff's favor. *See Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).

## DISCUSSION

7        In their FAC, plaintiffs sought an order from the Court compelling defendants to issue a

8    statewide bulletin clarifying the bullet button technology. FAC ¶ 36. In ruling on the motion to dismiss

9    the FAC, the Court found that plaintiffs failed to plead sufficient facts to show standing to seek

10   injunctive relief. In the operative complaint now before the Court, plaintiffs slightly modified their

11   theory of recovery, but seek similar injunctive and declaratory relief, asserting that California's AWCA

12   is unconstitutionally vague and ambiguous. ACC ¶ 113. They assert that the confusion caused by the

13   AWCA has had a "chilling effect on the fundamental right to 'keep and bear arms.'" *Id.* ¶ 111.

14   Specifically, plaintiffs seek an order from the Court suspending enforcement of the AWCA until

15   defendants "take steps to clarify the definition of Assault Weapon." *Id.*

16       Defendants contend that plaintiffs do not meet the requirements of standing for prospective

17   equitable relief and present unripe claims. Defendants further contend that the AWCA is not

18   unconstitutionally vague.

19       For the following reasons, the Court finds that plaintiffs do not have standing to seek injunctive

20   relief and present unripe claims.

22   **1.     Haynie and Richards Cannot Establish Standing to Seek Injunctive Relief**.

23       Defendants argue that plaintiffs Haynie and Richards lack standing because they do not meet the

24   standards for injunctive relief. The doctrine of standing sets forth minimum constitutional requirements

25   under Article III that serve to limit the jurisdiction of federal courts to the adjudication of actual cases

26   or controversies. *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983) (citations omitted). The question of

27   whether a plaintiff has standing presents both constitutional and prudential considerations. *Gladstone*

28   *Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979); *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

Before a federal court can consider the merits of a legal claim, the party seeking to invoke the court's jurisdiction must establish the requisite standing to sue. *Whitmore v. Ark.*, 495 U.S. 149, 154 (1990).

To establish Article III standing, a plaintiff must establish three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations and quotations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. Moreover, plaintiffs seeking equitable relief must also show a "likelihood of substantial and immediate irreparable injury," a separate and additional jurisdictional requirement. *Lyons*, 461 U.S. at 111 (internal citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

Defendants contend that plaintiffs have not established the imminent threat of irreparable harm needed for standing to seek injunctive relief, and also fail to overcome prudential limitations. Specifically, they argue that Haynie's and Richards' allegations of fear of being subjected to repeated wrongful arrests for AWCA violations are speculative and fall short of showing a likelihood of substantial and immediate irreparable injury. Defs.' Mot. at 9. Defendants argue that absent this showing, federalism considerations weigh in favor of judicial restraint from intervening with the state's criminal law matters through issuance of injunctions. *Id.*

In *Lyons*, a case where the plaintiff sought a preliminary and permanent injunction against the City of Los Angeles barring the use of the chokeholds, the United States Supreme Court elaborated upon the standing requirements for injunctive relief:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that *all* police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation

**United States District Court**
For the Northern District of California

1    or for questioning or, (2) that the City ordered or authorized police
     officers to act in such manner.

2

3    461 U.S. at 105-06 (emphasis in original).  In the earlier ruling on the motion to dismiss the FAC, this

4    Court applied *Lyons* and held that "to show a real and immediate threat and demonstrate a case or

5    controversy, Haynie and Richards would have to allege either that *all* law enforcement officers in

6    California *always* arrest any citizen they come into contact with who is lawfully in possession of a

7    weapon with a bullet button, or that the DOJ has ordered or authorized California law enforcement

8    officials to act in such a manner."  Docket No. 42, Order Granting Defendants' Motion to Dismiss and

9    Granting Leave to Amend ("FAC Order").

10        The motion to dismiss the FAC was granted despite Haynie's and Richards' arrests because "past

11   exposure to illegal conduct without any continuing, current adverse effects is not enough to show a case

12   or controversy for injunctive relief, and that even allegation of routine misconduct is not sufficient."

13   *Id.* at 11 (citing *Lyons*, 461 U.S. at 102, 105).  Furthermore, the Court found that plaintiffs' allegation

14   that the "DOJ has been simultaneously advising residents of California that their possession of certain

15   semi-automatic firearms is legal, while at the same time warning them that any one of the 58 of the

16   State's District Attorneys might come to a different conclusion and prosecute them" did not amount to

17   an official policy of instructing law enforcement to arrest citizens lawfully in possession of weapons

18   with a bullet button.  *Id.* at 12.  For the reasons discussed below, the Court now finds that plaintiffs

19   failed to adequately address these shortcomings in the ACC.

20        Plaintiffs fail to make the necessary showing of "imminent threat of irreparable harm" because

21   they fail to demonstrate they will suffer continuing, adverse effects in the absence of an injunction.

22   Haynie alleges that, after his false arrest, he sold his firearms for fear of future arrests, and now has a

23   reasonable fear of reacquiring similar firearms.  ACC ¶ 33.  As in the first motion to dismiss, Haynie's

24   single arrest is not sufficient to demonstrate a real and immediate threat because "past exposure to illegal

25   conduct" alone is not enough to meet the standard for injunctive relief.  *See Lyons*, 461 U.S. at 102, 105.

26   Moreover, his claim that he will have similar future encounters with law enforcement officers is pure

27   speculation, especially given the fact that he no longer owns the firearms at issue.  ACC ¶ 33.

28

United States District Court
For the Northern District of California

Richards also fails to adequately allege present, adverse effects. Richards contends that because he was arrested twice, he is realistically threatened by a repetition of wrongful arrests. *Id.* ¶ 75. The Court addressed the issue of Richards' second arrest in a motion to dismiss his separate lawsuit, prior to the consolidation of cases. The Court stated that the allegations regarding his second arrest "will not suffice to establish standing to seek injunctive relief under *Lyons*." C 11-2493, Docket No. 39, Order Granting In Part and Denying In Part Defendants' Motion to Dismiss ("Richards Order"). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lyons*, 461 U.S. at 95-96. The Court further determined that "even assuming that both arrests . . . constituted illegal conduct, these arrests alone do not provide evidence of continuing adverse effects."[1] Richards Order at 7; *see Lyons*, 461 U.S. at 103 ("[C]ase or controversy considerations obviously shade into those determining whether the complaint states a sound basis for equitable relief . . . even if the complaint presented an existing case or controversy, an adequate basis for equitable relief against petitioners had not been demonstrated.") (citing *O'Shea*, 414 U.S. at 499, 502).

To demonstrate that there are continuing adverse effects, plaintiffs cite to additional instances of false arrests of citizens based on firearms being misidentified by police. Plaintiff's Opposition to Defendants' Motion to Dismiss the ACC ("Pls.' Opp'n"), 16; ACC ¶ 104. However, as detailed above, even an allegation of routine misconduct is not sufficient, as it does not amount to an allegation that all law enforcement officers in California always wrongly arrest any citizen with whom they come into contact who is lawfully in possession of a weapon with a bullet button, as *Lyons* requires. *Lyons*, 461 U.S. at 102, 105.

---

[1] Richards' separate lawsuit sought prospective injunctive relief against the City of Rohnert Park. The Court determined that Richards' claims contained substantially similar allegations to those made in the FAC, which was dismissed for lack of standing. Citing the FAC Order, the Court found that "to seek injunctive relief against the City of Rohnert Park, Richards would have to allege that every Rohnert Park police officer will without fail arrest anyone who he finds in possession of a firearm with a bullet button." Richards Order at 7. The Court further stated that "Richards' second arrest by the Sonoma County Sheriff's Office cannot support his claim for injunctive relief against the City of Rohnert Park" because they are "separate and distinct governmental entities." *Id.* Though the present case pertains to one governmental entity, namely the California DOJ, the Court has made clear that plaintiffs must meet the *Lyons* standard by alleging that every officer will arrest anyone who he finds in possession of a firearm with a bullet button. Thus, even two past false arrests for the same conduct are not sufficient to meet this standard, especially absent a current threat of prosecution.

United States District Court
For the Northern District of California

Plaintiffs cite to two Ninth Circuit cases to support their arguments for standing; however, these cases are distinguishable from the present case, and are ultimately unavailing. The Supreme Court in *Lyons* made clear that "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws in the absence of irreparable injury which is both great and immediate." *Id.* at 112. Plaintiffs, in their opposition, cite to *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985) and *Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001), two Ninth Circuit cases applying *Lyons,* as a basis for standing to seek injunctive relief. In *LaDuke*, the Ninth Circuit upheld the District Court's issuance of an injunction prohibiting federal immigration officers from conducting farm and ranch checks of migrant farm housing without a warrant, probable cause, or articulable suspicion. 762 F.2d at 1333. While the Court held that plaintiffs demonstrated "a likelihood of recurrent injury," it also concluded that unlike *Lyons*, prudential limitations of comity were not a concern because the injunction involved federal immigration issues, rather than state law enforcement matters. *Id.* at 1324-25. The Ninth Circuit stated:

> A third distinguishing feature that separates the present case from *Lyons* is the absence of the prudential limitations circumscribing federal court intervention in state law enforcement matters. *Lyons*, *Rizzo*, and *O'Shea* all involved attempts by plaintiffs to entangle federal courts in the operations of state law enforcement and criminal justice institutions. *See City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (city law enforcement practices); *Rizzo v. Goode*, 423 U.S. 362 (1976) (same); *O'Shea v. Littleton*, 414 U.S. 488 (1974) (county criminal justice system). Obviously, none of the considerations inherent in the judicial concept of "Our Federalism," *Younger v. Harris*, 401 U.S. 37, 44, (1971), are implicated in constitutional challenges to executive branch behavior in federal courts. This court cannot rely on a state judiciary to correct the unconstitutional practices of federal officials. *Cf. Los Angeles v. Lyons*, 461 U.S. at 113 (comity counsels in favor of permitting state judiciary systems to oversee state law enforcement practices). Accordingly, the comity considerations which influenced the Supreme Court's decisions in *O'Shea*, *Rizzo* and *Lyons* are inapplicable in this case.

*Id.* As in *Lyons* and unlike *LaDuke*, the present case involves a request for federal court intervention in state law enforcement matters. Therefore, it is particularly important for plaintiffs to meet their burden of demonstrating a likelihood of imminent and irreparable harm before the Court may issue injunctive relief.

**United States District Court**
For the Northern District of California

1    *Hawkins* is also distinguishable from the present case.  In *Hawkins*, the Ninth Circuit held that

2    the plaintiff had standing to seek injunctive relief, despite federalism considerations, because he

3    demonstrated a likelihood of irreparable injury.  251 F.3d at 1237.  The plaintiff, a defendant in an

4    ongoing criminal prosecution, sought an injunction to prevent the county sheriff's office from using an

5    electrical restraint "stun belt" while plaintiff appeared in court, based on plaintiff's alleged past

6    misbehavior while in court.  *Id.* at 1236-37.  The Ninth Circuit determined that there was a likelihood

7    of reoccurrence because plaintiff remained imprisoned and in custody of defendants, and "needed only

8    to enter a Los Angeles courtroom to justify use" of the belt.  *Id.* ("Since use of the belt is based on past

9    conduct, Hawkins need not have been arrested or engaged in illegal behavior to subject him to its use.")

10    The Ninth Circuit also noted that, unlike the conduct in *Lyons*, the use of the belt stemmed from the

11    Sheriff's official written policy.  *Id.* at 1237.

12        As discussed above, Haynie and Richards have failed to demonstrate a likelihood of

13    reoccurrence, and there is no official DOJ policy that instructs officers to arrest citizens who own

14    firearms that are lawful under the AWCA.  Unlike the plaintiff in *Hawkins*, Haynie and Richards would

15    need to suffer an entirely new arrest, based on new conduct – an entirely speculative set of events.

16    Because Haynie and Richards have failed to make a showing of likelihood of reoccurence, comity

17    considerations weigh in favor of judicial restraint, and the ACC must be dismissed for lack of standing.

18    Further leave to amend will not be given, since leave to amend was already given on this very issue.

19    *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

20

21    **2.      The Calguns Foundation and The Second Amendment Foundation Lack Standing.**

22        The Court further finds that both the Calguns Foundation and the Second Amendment

23    Foundation lack standing to bring this action on behalf of members or in their own right.  Associations

24    have standing to sue on behalf of their members "only if (a) their members would otherwise have

25    standing to sue in their own right; (b) the interests that the organizations seek to protect are germane to

26    their purpose; and (c) neither the claim asserted nor the relief requested requires the participation of

27    individual members in the lawsuit." *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130-31

28    (9th Cir. 1996) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977), superseded

in part by statute as stated in *United Food & Commer. Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544 (1996)).

Because associations have standing to sue on behalf of their members "only if . . . their members would otherwise have standing to sue in their own right" and because Richards and Haynie failed to establish standing to sue for injunctive relief, the Calguns Foundation and the Second Amendment Foundation similarly do not have standing to seek injunctive relief against defendants in this Court. *See San Diego Cnty. Gun Rights Comm.*, 98 F.3d at 1130-31.

Furthermore, an association has direct standing only if "it [shows] a drain on its resources from both a diversion of its resources and frustration of its mission." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (citing *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir.2002)). However, "standing must be established independent of the lawsuit filed by the plaintiff." *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n. 3 (9th Cir. 2001)). An association "cannot manufacture [an] injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

The Calguns Foundation's allegations that it paid for the defense of several members, including Haynie and Richards, does not suffice to establish associational standing. *See Combs*, 285 F.3d at 903 ("[A]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit . . . .") (internal quotation marks omitted). In addition, the Calguns Foundation and the Second Amendment Foundation do not allege that they have incurred any expenses aside from the litigation costs. *Id.* at 903 ("[A]n organization establishes Article III injury if it alleges that purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.") (internal citations omitted); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("[C]oncrete and demonstrable injury to the organization's activities with the consequent drain on the organization's resources constitutes far more than simply a setback to the organization's abstract social interests."). Therefore, the Calguns Foundation and the Second Amendment Foundation do not have standing to sue in their own right.

United States District Court
For the Northern District of California

12

United States District Court
For the Northern District of California

1    To challenge the constitutionality of a statute as applied, a party must have standing. *O'Shea*,

2    414 U.S. at 493 ("Those who seek to invoke the power of federal courts must allege an actual case or

3    controversy . . . a plaintiff must allege some threatened or actual injury before a federal court may

4    assume jurisdiction."). All plaintiffs – both individual and institutional – have failed to show standing

5    to seek injunctive relief, and therefore the Court may not address plaintiffs' constitutional challenge to

6    the AWCA. *See Fleck & Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1106

7    (9th Cir. 2006) (holding that the district court erred in reaching the merits where plaintiff's complaint

8    failed to demonstrate a cognizable injury and did not establish associational standing.).

9

10   **3.      Plaintiffs' Claims for Injunctive Relief are Not Ripe for Adjudication.**

11          Finally, defendants contend that plaintiffs' claims for injunctive and declaratory relief are not

12   ripe for review. Defs.' Mot. at 7. They argue that "allegations in the ACC affirmatively demonstrate

13   that [Haynie] no longer own guns, demonstrating that no present controversy exists as to him, and the

14   allegations as to [Richards'] present gun ownership were inconclusive." Defs.' Mot. at 1. With respect

15   to Haynie, plaintiffs argue his fear of future wrongful arrest is ripe for review because he alleged a desire

16   to reacquire a firearm like the one that got him arrested. Pls.' Opp'n at 9. With respect to Richards,

17   plaintiffs argue that it can be reasonably inferred that he recovered his firearms from the arresting

18   agency after his second arrest. *Id.* For the following reasons, the Court finds that plaintiffs fail to allege

19   sufficient facts demonstrating ripeness.

20          "Ripeness doctrine protects against premature adjudication of suits in which declaratory relief

21   is sought." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1044 (9th Cir. 1999) (internal citations

22   omitted). "In suits seeking both declaratory and injunctive relief against a defendant's continuing

23   practices, the ripeness requirement serves the same function in limiting declaratory relief as the

24   imminent-harm requirement serves in limiting injunctive relief." *Id.* Ripeness is "peculiarly a question

25   of timing." *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140, (1974). Significantly, "[a] claim is not

26   ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed

27   may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotations omitted).

28

**United States District Court**
For the Northern District of California

1    In addition to plaintiffs' failure to show a likelihood of substantial and immediate injury required

2 for standing to seek injunctive relief, the ACC must also be dismissed because plaintiffs fail to allege

3 sufficient facts demonstrating ripeness.  Specifically, neither Haynie nor Richards adequately alleges

4 that he currently possesses a weapon that might subject him to prosecution under the AWCA.  Haynie

5 alleges that he sold his firearms and fears that he may be arrested again should he reacquire them.  ACC

6 ¶ 33 ("[Haynie] may suffer repeated wrongful arrests in the future if he reacquires a firearm").  Because

7 Haynie's fear of future arrests depends upon the contingency of his reacquiring a new firearm that might

8 in turn be subject to AWCA enforcement, his claims are not ripe for relief.  *See Thomas v. Anchorage*

9 *Equal Rights Comm'n*, 220 F.3d 1134, 1138-40 (9th Cir. 2000) (en banc) ("'[S]uch "some day"

10 intentions—without . . . specification of when the some day will be—do not support a finding of the

11 "actual or imminent" injury that our cases require.'") (quoting *Lujan*, 504 U.S. at 564).

12    Similarly, Richards does not allege in the ACC that his firearms were returned to him after his

13 second arrest, nor does he allege that he currently owns firearms that are subject to enforcement under

14 the AWCA.  Because Richards has not sufficiently alleged that he currently owns the firearms at issue,

15 he also fails to demonstrate a case or controversy that is ripe for review.  Though it is possible that

16 Richards could amend the ACC to cure this defect, amendment would be futile because he still lacks

17 standing for injunctive relief.  Accordingly, the Court grants defendants' motion to dismiss, without

18 leave to amend.  *See Bonin*, 59 F.3d at 845.

19

20                                        **CONCLUSION**

21    For the foregoing reasons and for good cause shown, and the basis of the record before it, the

22 Court hereby GRANTS defendants' motion to dismiss  plaintiffs' Third Amended Consolidated

23 Complaint, without leave to amend.  This order resolves Docket No. 92.

24

25    **IT IS SO ORDERED.**

26
Dated: March 4, 2014                              _____
27                                                SUSAN ILLSTON
                                                  UNITED STATES DISTRICT JUDGE
28